Carmen **MANGASER** and Henry Mangaser, Appellants,

v.

**UNITED STATES of America,**
Appellee.

No. 19002.

United States Court of Appeals
Ninth Circuit.

Aug. 20, 1964.

John Alan Montag, Los Angeles, Cal., for appellants.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Crim. Section, David R. Nissen, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and McNICHOLS, District Judge.

BARNES, Circuit Judge:

This is an appeal in forma pauperis. The two appellants were charged in the

last two counts of an eight count indictment with selling and concealing heroin on January 28, 1963, in violation of Section 174, Title 21, United States Code.

There is no doubt in our minds of the guilt of both appellants in view of the overwhelming weight of evidence arising because of their possession of marked government money used in the purchase of this heroin. But this evidence was produced by a search occurring after an arrest without a warrant, and if the evidence obtained as the result of the search were to be eliminated, à most sketchy case against each appellant is established.

At the trial, appellants' counsel protected their record by objections and moved for the suppression of Exhibits 6 and 7 (the list of the recorded serial numbers of the bills furnished by the government, and the $140.00 in bills bearing such serial numbers, found on the persons of appellants). Appellants also urge the insufficiency of the evidence to convict, and improper joinder. These points we need not consider.

Estrada, (a special employee of the Bureau of Narcotics and a two-year heroin user before his arrest for violation of narcotics laws early on January 3, 1963 and his subsequent release on his own recognizance) testified to purchasing heroin on January 4th, 7th, 9th and 28th from defendant Paniagua. Estrada's car was allegedly used as a conveyance to make "contact" with Paniagua's source of supply, when Paniagua had no heroin in his house. On January 28th, 1963, about noon, Estrada and Paniagua went to the vicinity of Bell and Orchard Streets, Bell, California, from Paniagua's house where Estrada had picked up Paniagua. A 1955 Buick apparently followed or accompanied Estrada's car. (The occupants were referred to as possible purchasers of heroin, but no contact was reported between the occupants of the Buick and Estrada, or Paniagua, or either defendant.)

In the vicinity of Bell and Orchard Streets narcotics officer Watson testified

he observed a 1950 red Chevrolet stopped out in the street, apparently disabled. It was occupied by a male Mexican, a woman and a child. Paniagua left Estrada's car, walked to this Chevrolet, and talked to its occupants. The three occupants were identified *after* their subsequent arrest as the appellants and their child.

Paniagua returned to Estrada's car, and asked Estrada for the marked money for the purchase of heroin. (This was heard by various witnesses through the Fargo electronic listening device that Estrada was wearing.)

Estrada testified that while Paniagua, after talking to the driver of the red Chevrolet, came back to obtain the money for the purchase of the heroin, the red Chevrolet drove into a driveway. From that time on, both the red Chevrolet and Paniagua were out of sight. Paniagua returned to Estrada with the heroin, which is the basis of counts 7 and 8, telling Estrada he had obtained "the source's" last "five quarters," that "the source" had "to go get some." Deputy Sheriff Stoops saw Paniagua leave in Estrada's car from the vicinity of Bell and Orchard Streets, and shortly thereafter saw appellants leave the vicinity.

When appellants returned to their home, at the rear of the above mentioned driveway at 3:15 P.M. on January 28, 1964, they were arrested.

We are not concerned here with the Mangasers' excuses—both long and conflicting—as to how they obtained the marked money (allegedly payment of a debt owed them by Paniagua), or why Mrs. Mangaser had lactose in her home (it was her baby's food), nor with Paniagua's testimony that he had *not* obtained the heroin from the appellants.

We are concerned with whether there was probable cause to arrest the Mangasers, so that their search and the introduction into evidence of the product of that search—the marked money—was justified.

On the question of probable cause, the government lists twelve facts and two cases in support of its position.

## A. Facts as to Probable Cause

(1) On three occasions in January 1963 Daniel Estrada had purchased heroin from Paniagua under the supervision of narcotics' agents and on each occasion, Paniagua had driven away from his house to some other location where he apparently obtained the narcotics he was selling.

(2) On January 28, 1963, Estrada again went to Paniagua's house to buy heroin and was told by Paniagua that some customers in a Buick also wanted to purchase narcotics.

(3) Followed by the Buick, Estrada drove Paniagua to appellants' neighborhood, and there Paniagua alighted from Estrada's vehicle and spoke to appellants who were sitting in a 1950 Chevrolet which was stopped in the street.

(4) Paniagua returned to Estrada's auto and asked him for the money—which Estrada gave him.

(5) As this was being done, appellants drove their red Chevrolet into a driveway and disappeared from view.

(6) Paniagua walked in the direction their car had gone until he too was lost from sight.

(7) Estrada then drove a short distance away and met with officers. When he arrived back at his original location, the Buick, with the other "customers", was still parked at the curb. Soon Paniagua returned and gave Estrada some heroin.

(8) Paniagua said that Estrada had bought his "source's" last five quarters and the source had to go get some more.

(9) Almost immediately after this, the red Chevrolet, occupied by appellants, backed out of the driveway and drove away.

(10) Estrada subsequently met with officers, turned over the heroin, and was found to be without the money previously given him.

(11) That afternoon appellants reappeared in their Chevrolet and drove into the same driveway.

(12) They were arrested as they alighted from the car.

Of these facts, 1, 2, 4, 9, 10, 11 and 12, have, in our opinion, no significance with respect to probable cause as to a participation in *this* transaction by *these* appellants. Fact 3 establishes contact, but whether this contact was a mere innocent conversation or salutation between acquaintances, or something more, we cannot know.

Facts 5, 6 and 7 establish the *possibility* that Paniagua could have contacted and obtained heroin from appellants.

Fact 8 inferentially ties in appellants with whoever was supplying Paniagua, *if* the Mangasers had gone out to get more heroin. A logical inference they did so is largely dispelled by two facts. First, when next seen and arrested they had no heroin on them, or in their car; second, there is no testimony the occupants of the Buick (allegedly "customers" and allegedly the persons on whose behalf the appellants left to get more heroin) were ever supplied, or in any way contacted by appellants or any agent or contact-man, acting for them.

Thus, when the Mangasers were arrested, there was certainly a possibility they were the suppliers, but can it fairly be said more than a suspicion existed? Was the proof enough to establish probable cause?

## B. Law as to Probable Cause

The government relies on two cases: (1) Chin Kay v. United States, 9 Cir. 1962, 311 F.2d 317. Here a pre-trial motion to suppress was made, under Rule 41(e). The evidence was found after a search warrant had been issued, and the government claimed the search warrant was authorized because (a) a confidential informant had taken a transmitting instrument or device into Tong quarters, and Inspector Fahey, a narcotics officer, had, by listening to this electronic device, *heard* Chin agree to sell opium. This information was relayed to Feldman, who sought the warrant. (b) Three additional informants had told

Feldman Chin had opium in his possession. (c) Feldman, an experienced narcotics inspector, had personally smelled opium at the Tong's quarters.

(2) Gilbert v. United States, 9 Cir. 1962, 307 F.2d 322, cert. den. 372 U.S. 969, 83 S.Ct. 1095, 10 L.Ed.2d 132. This was a mail robbery case, where a confidential informant of known reliability had "fingered" the appellant, both before and after the robbery itself. (Cf.: n. 1, p. 323.) The police ascertained defendant Brown and another person, after the robbery, lived at 915 Fulton Street, San Francisco, California, an address *not* given by Brown to his probation officer. When this address was approached, a Cadillac automobile, "with a dark lower portion and a white top," was found parked nearby. It was registered to Brown at the 915 Fulton Street address. An auto fitting that description had been seen at the scene of the mail robbery. When the officers confirmed with the landlady at 915 Fulton Street that defendant Brown and another person lived there, in apartment 4, they were admitted to the apartment, recognized Brown and Gilbert and arrested them. No pretrial motion to suppress was made in this case.

We cannot agree that any of these cases cited by the government, on their facts, are here controlling, or even substantially persuasive.

■ Mere suspicion, or the existence of a possibility, that defendants have committed a crime does not justify an arrest. Henry v. United States, 1959, 361 U.S. 98, 101, 80 S.Ct. 168, 4 L.Ed.2d 134. On the other hand, we cannot re-

quire the police to have proof sufficient to establish a defendant's guilt before they act. Draper v. United States, 1959, 358 U.S. 307, 312, 79 S.Ct. 329, 3 L.Ed.2d 327.

■ There must exist a quantum of information that would "warrant a man of reasonable caution in the belief" that a felony has been committed. Carroll v. United States, 1925, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 443.

A relaxation of the fundamental requirements of probable cause would "leave law-abiding citizens at the mercy of the officers' whim or caprice." Brinegar v. United States, 1949, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, reh. den. 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513.

We doubt that the interested officers, on the facts here known to them, could have obtained a warrant from a magistrate for appellants' arrest. Giordenello v. United States, 1958, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503.

■ The officers had probable cause to believe that an offense had been committed, but that is not enough. They had no probable cause to believe that these appellants had committed it. Rules 3 and 4, Fed.R.Crim.P. And see the famous "sea-dog" case, Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

The judgment of conviction is reversed and the indictment dismissed as to these two appellants.