**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**David Echevarria GARCIA, Defendant-Appellant.**

**No. 23313.**

United States Court of Appeals Ninth Circuit.

Aug. 27, 1969.

William N. Fielden (argued), La Jolla, Cal., for appellant.

Brian E. Michaels (argued), Asst. U. S. Atty., Edwin L. Miller, Jr., U. S. Atty., San Diego, Cal., Joseph A. Mil-

chen, Asst. U. S. Atty., San Diego, for appellee.

Before JERTBERG and HUFSTEDLER, Circuit Judges, and FERGUSON,* District Judge.

PER CURIAM:

Appellant David Garcia, together with defendants Gabriel Hernandez and Christine Segovia, was convicted of the charges in a four-count indictment. The counts charged as follows: Count One charged a violation of 21 U.S.C. § 176a for conspiracy to smuggle marihuana and to conceal and facilitate the transportation and concealment of illegally imported marihuana; Count Two, a violation of 21 U.S.C. § 176a for smuggling marihuana; Count Three, a violation of 21 U.S.C. § 176a for concealing and facilitating the transportation and concealment of illegally imported marihuana; and Count Four, a violation of 18 U.S.C. § 545 for smuggling merchandise.

From a sentence of eight years on Count One, five years on each of Counts Two, Three and Four, the sentences all to run concurrently, appellant Garcia appeals invoking our jurisdiction under 28 U.S.C. §§ 1291, 1294.

Appellant makes three contentions: (1) the government did not prove any overt act concerning the conspiracy count; (2) there was no proof that he possessed the marihuana; and (3) his motion to suppress the introduction of evidence should have been granted. We reverse, considering the third contention only.

The facts, which are not disputed, are:

About 6:30 p. m. on June 19, 1967, defendants Segovia and Hernandez entered the United States from Mexico on foot at Calexico, California. Both defendants made negative customs declarations to Customs Agent Burow. Agent Burow directed and accompanied them to the customs building. Segovia was seated and Agent Burow took Hernandez into a separate search room. Hernandez appeared to be extremely nervous and twice asked for permission to use the rest room, which was refused until after a search was conducted. During the search Hernandez stated that he had come from the Los Angeles area with Segovia by bus two days earlier and that they were intending to return home by bus.

In Hernandez' possession were found (1) a receipt from the Hotel Lucerna in Mexicali showing registration for three persons who arrived on June 17th and departed on June 19th; (2) a note of introduction to one Jimmie, written in Spanish and signed by Frank, "Introducing my comrade—you know the rest", and (3) a card of appellant Garcia with the telephone number of the Roma Hotel on it, which hotel in Mexicali was well known to customs agents as a meeting place for dealers in narcotics and marihuana.

After searching Hernandez, Agent Burow returned to Segovia and searched her purse. Fireworks and a switchblade knife were found. Agent Martin was present and Agent Burow told him that he felt something was wrong with Hernandez.

While Hernandez and Segovia were being searched Garcia entered the United States in a 1957 Pontiac station wagon which he parked in front of the customs office, and entered to register as a previously convicted narcotics violator.

When Hernandez came from the search room, Garcia was escorted into it by Agent Morris. Garcia was then taken outside where Agent Morris conducted a search of the station wagon. Some women's clothing was found in the back seat. Garcia stated that his wife had come down with him but was visiting relatives in Calexico. After the search of his automobile, Garcia drove away and was not observed until he was ar-

---

* Hon. Warren J. Ferguson, United States District Judge, Los Angeles, California, sitting by designation.

rested two hours later twenty-six miles from Calexico.

While Garcia was in the customs house it appeared to the customs agents that he was watching the other two defendants and that he "sort of hung around."

From the documents found on Hernandez the customs agents made the following deductions: (1) Hernandez and Segovia had not come to Mexico by bus, but must have come by automobile because the Hotel Lucerna is five miles south of Mexicali and is not on a bus line; (2) the note of introduction was typical of notes of introduction to a source of marihuana and narcotics; and (3) Hernandez and Segovia had met or communicated with a dealer in contraband at the Hotel Roma. For those reasons, when Hernandez and Segovia were allowed to leave the customs house at 7:00 p. m., they were placed under surveillance by three customs agents.

Hernandez and Segovia proceeded to walk north into downtown Calexico and walked around a three-block area for twenty minutes. They then entered a bus station which was one and one-half blocks from the border. Hernandez purchased two tickets, and both sat in the station. Shortly thereafter, Hernandez told Segovia that he had to stay another day and that there was something he had to do. He then left by the back door and walked around a six-block area until he entered a 1957 red and white Pontiac sedan when another person who had been the driver got out. This was less than half a mile from the border, although the automobile had never been observed crossing it.

Hernandez drove away, followed by Agents Quick and Martin who observed that the fenders appeared to be freshly painted. The agents believed that they were painted after special compartments often used in the smuggling of marihuana had been installed in them.

Hernandez was then stopped, arrested and the automobile taken back to the border for a search. The search revealed that there were contained in special compartments under the fenders 125 pounds of typically Mexican-packaged unmanicured marihuana and 79,000 amphetamine pills. The pills were contained in plastic bags sold under the trade name "Baggies".

During the time of the surveillance and arrest of Hernandez, surveillance of Segovia in the bus station continued. There was no communication, however, between the two surveillance teams, and Agent Banda, who was watching Segovia, was unaware of what was happening to Hernandez and the agents following him.

Garcia was subsequently observed to enter the bus station and approach Segovia. Agent Banda had not seen Garcia until that time. Garcia spoke to Segovia, inquiring about what had happened at the border and asked if she wanted a ride back to Los Angeles. They left the station and drove away in Garcia's station wagon. The station wagon was not placed under surveillance by the customs agents. Agent Banda wrote down the license number of the station wagon and returned to the customs house. He reported to Agents Quick and Martin what he observed at the bus station. The three agents in two automobiles then chased after the station wagon, and twenty minutes later and twenty miles north of Calexico stopped the station wagon with Garcia driving and Segovia as a passenger.

It appeared to Agents Quick and Martin after the arrest of Garcia and Segovia that Garcia was dressed in the same manner as the man who was seen leaving the Pontiac sedan when Hernandez took over. A search of the station wagon driven by Garcia revealed one "Baggie" polyethylene bag under the front seat, several suitcases belonging to Segovia and several plaster statues. A search of Garcia revealed that he had a match box from the Hotel Lucerna.

The arrest and search of Garcia were made without a warrant, but the district court held that there was probable cause to arrest Garcia and to search him and

his automobile, and also that the search of Garcia was a valid border search.

The test of whether a search not made in the immediate vicinity of the border is a valid "border search" is set forth in Alexander v. United States, 362 F.2d 379 (9th Cir. 1966), cert. denied, 385 U. S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966), as follows:

> "[T]he legality of the search must be tested by a determination whether the totality of the surrounding circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicle at the time of search was aboard the vehicle at the time of entry into the jurisdiction of the United States. * * * " Id. at 382.

█ █ In this case the Pontiac sedan in which Hernandez was arrested was never seen to cross the border, so automatically the search of it must be excluded as a border search. The Pontiac station wagon which Garcia was driving was stopped two hours after it crossed the border and twenty miles away and it was never under surveillance for any part of that time and distance. Its search must therefore also fail as a valid border search.

In regard to the contention that the officers had probable cause to arrest Garcia and conduct a search incident to a lawful arrest, the government contends that all the facts known to the customs agents indicated that a third person in addition to Segovia and Hernandez was involved in smuggling operations. The government then argues that the agents had the lawful right to arrest that third person who was later identified as Garcia.

An arrest without a warrant is valid only if the arresting officer has probable cause to believe that the suspect has committed or is committing a felony. Blackford v. United States, 247 F.2d 745 (9th Cir. 1957), cert. denied, 356 U.S. 914, 78 S.Ct. 672, 2 L.Ed.2d 586 (1958). An arrest without probable cause cannot be validated by evidence obtained in the subsequent search. Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Busby v. United States, 296 F.2d 328 (9th Cir. 1961), cert. denied, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962). A lawful arrest must stand on firmer ground than mere suspicion, Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), or possibility. Mangaser v. United States, 335 F.2d 971, 974 (9th Cir. 1964).

█ The government's argument, that there was probable cause to believe that a third person was involved, concedes that as to Garcia being that third person the customs agents had far less than probable cause to believe that he was engaged in felony activity. It is therefore clear that, despite the fact that the agents may have suspected the possibility of a third person involved in the illegal operation, they had nothing more than mere suspicion to connect any particular person, including appellant, with such operation. See, e. g., United States v. Di Re, 332 U.S. 581, 593–594, 68 S.Ct. 222, 92 L.Ed. 210 (1948), where it was held that even the fact that the defendant was in the presence of parties to an illegal transaction did not alone justify his arrest. In fact the government concedes that at no time until Garcia was arrested and searched was the identity of that third person known.

Therefore, Garcia's motion to suppress should have been granted. The judgment of conviction is reversed.