# HENRY *v.* UNITED STATES.

No. 17.   Argued October 20–21, 1959.—Decided November 23, 1959.

*Edward J. Calihan, Jr.* argued the cause and filed a brief for petitioner.

*Kirby W. Patterson* argued the cause for the United States.   With him on the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey* and *Beatrice Rosenberg.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner stands convicted of unlawfully possessing three cartons of radios valued at more than $100 which had been stolen from an interstate shipment.   See 18 U. S. C. § 659.   The issue in the case is whether there was probable cause for the arrest leading to the search that produced the evidence on which the conviction rests.   A timely motion to suppress the evidence was made by

petitioner and overruled by the District Court; and the judgment of conviction was affirmed by the Court of Appeals on a divided vote. 259 F. 2d 725. The case is here on a petition for a writ of certiorari, 359 U. S. 904.

There was a theft from an interstate shipment of whisky at a terminal in Chicago. The next day two FBI agents were in the neighborhood investigating it. They saw petitioner and one Pierotti walk across a street from a tavern and get into an automobile. The agents had been given, by the employer of Pierotti, information of an undisclosed nature "concerning the implication of the defendant Pierotti with interstate shipments." But, so far as the record shows, he never went so far as to tell the agents he suspected Pierotti of any such thefts. The agents followed the car and saw it enter an alley and stop. Petitioner got out of the car, entered a gangway leading to residential premises and returned in a few minutes with some cartons. He placed them in the car and he and Pierotti drove off. The agents were unable to follow the car. But later they found it parked at the same place near the tavern. Shortly they saw petitioner and Pierotti leave the tavern, get into the car, and drive off. The car stopped in the same alley as before; petitioner entered the same gangway and returned with more cartons. The agents observed this transaction from a distance of some 300 feet and could not determine the size, number or contents of the cartons. As the car drove off the agents followed it and finally, when they met it, waved it to a stop. As he got out of the car, petitioner was heard to say, "Hold it; it is the G's." This was followed by, "Tell him he [you] just picked me up." The agents searched the car, placed the cartons (which bore the name "Admiral" and were addressed to an out-of-state company) in their car, took the merchandise and petitioner and Pierotti to their office and held them for about two hours when the agents learned that the cartons contained

stolen radios. They then placed the men under formal arrest.

The statutory authority of FBI officers and agents to make felony arrests without a warrant is restricted to offenses committed "in their presence" or to instances where they have "reasonable grounds to believe that the person to be arrested has committed or is committing" a felony. 18 U. S. C. § 3052. The statute states the constitutional standard, for it is the command of the Fourth Amendment that no warrants for either searches or arrests shall issue except "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The requirement of probable cause has roots that are deep in our history. The general warrant,[1] in which the name of the person to be arrested was left blank, and the writs of assistance, against which James Otis inveighed,[2] both perpetuated the oppressive practice of allowing the police to arrest and search on suspicion. Police control took the place of judicial control, since no showing of "probable cause" before a magistrate was required. The Virginia Declaration of Rights, adopted June 12, 1776, rebelled against that practice:

> "That general warrants, whereby any officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offence is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted."

[1] Declared illegal by the House of Commons in 1766. 16 Hansard, Parl. Hist. Eng. 207.

[2] Quincy's Mass. Rep. 1761–1772, Appendix, p. 469.

The Maryland Declaration of Rights (1776), Art. XXIII, was equally emphatic:

> "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants—to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special—are illegal, and ought not to be granted."

And see North Carolina Declaration of Rights (1776), Art. XI; Pennsylvania Constitution (1776), Art. X; Massachusetts Constitution (1780), Pt. I, Art. XIV.

That philosophy later was reflected in the Fourth Amendment. And as the early American decisions both before [3] and immediately after [4] its adoption show, common rumor or report, suspicion, or even "strong reason to suspect" [5] was not adequate to support a warrant for arrest. And that principle has survived to this day. See *United States* v. *Di Re,* 332 U. S. 581, 593–595; *Johnson* v. *United States,* 333 U. S. 10, 13–15; *Giordenello* v. *United States,* 357 U. S. 480, 486. Its high water was *Johnson* v. *United States, supra,* where the smell of opium coming from a closed room was not enough to support an arrest and search without a warrant. It was against this background that two scholars recently wrote, "Arrest on mere suspicion collides violently with the basic human right of liberty." [6]

---

[3] *Frisbie* v. *Butler,* Kirby's Rep. (Conn.) 1785–1788, p. 213.

[4] *Conner* v. *Commonwealth,* 3 Binn (Pa.) 38; *Grumon* v. *Raymond,* 1 Conn. 40; *Commonwealth* v. *Dana,* 2 Met. (Mass.) 329.

[5] *Conner* v. *Commonwealth, supra,* note 4, at 43.

[6] Hogan and Snee, The McNabb-Mallory Rule: Its Rise, Rationale and Rescue, 47 Geo. L. J. 1, 22.

Uniform Crime Reports for the United States, compiled by the Federal Bureau of Investigation (Vol. XXVIII, No. 1, Semiannual

Evidence required to establish guilt is not necessary. *Brinegar* v. *United States*, 338 U. S. 160; *Draper* v. *United States*, 358 U. S. 307. On the other hand, good faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. *Stacey* v. *Emery*, 97 U. S. 642, 645. And see *Director General* v. *Kastenbaum*, 263 U. S. 25, 28; *United States* v. *Di Re, supra,* at 592; *Giordenello* v. *United States, supra,* at 486. It is important, we think, that this requirement be strictly enforced, for the standard set by the Constitution protects both the officer and the citizen. If the officer acts with probable cause, he is protected even though it turns out that the citizen is innocent. *Carroll* v. *United States,* 267 U. S. 132, 156. And while a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made with probable cause. *Carroll* v. *United States, supra,* at 155–156. This immunity of officers cannot fairly be enlarged without jeopardizing the privacy or security of the citizen. We turn then to the question whether prudent men in the shoes of these officers (*Brinegar* v. *United States, supra,* at 175) would have seen enough to permit them to believe that petitioner was violating or had violated the law. We think not.

---

Bull., 1957), pp. 64, 65, shows 1956 *arrest* statistics for 1,025 cities in the United States, including 26 cities over 250,000 population,and 458 cities under 10,000 population.

The report states that 111,274 were arrested on suspicion (but not in connection with any specific offense) and subsequently released without prosecution. This was at the rate of 280.4 per 100,000 inhabitants.

The grand total of persons arrested—both for a specific offense (but excluding traffic offenses) and on suspicion alone—and released without being held for prosecution was 264,601. This was at the rate of 666.7 per 100,000 inhabitants.

The prosecution conceded below, and adheres to the concession here,[7] that the arrest took place when the federal agents stopped the car. That is our view on the facts of this particular case. When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete. It is, therefore, necessary to determine whether at or before that time they had reasonable cause to believe that a crime had been committed. The fact that afterwards contraband was discovered is not enough. An arrest is not justified by what the subsequent search discloses, as *Johnson v. United States, supra,* holds.

It is true that a federal crime had been committed at a terminal in the neighborhood, whisky having been stolen from an interstate shipment. Petitioner's friend, Pierotti, had been suspected of some implication in some interstate shipments, as we have said. But as this record stands, what those shipments were and the manner in which he was implicated remain unexplained and undefined. The rumor about him is therefore practically meaningless. On the record there was far from enough evidence against him to justify a magistrate in issuing a warrant. So far as the record shows, petitioner had not even been suspected of criminal activity prior to this time. Riding in the car, stopping in an alley, picking up packages, driving away—these were all acts that were outwardly innocent. Their movements in the car had no mark of fleeing men or men acting furtively. The case might be different if the packages had been taken from a terminal or from an interstate trucking platform. But they were not. As we have said, the alley where the packages were picked up was in a residential section.

---

[7] An alternative theory that the arrest took place at a subsequent time was discussed by the Government only to make clear that it would press that position on the facts of another case now pending here, No. 52, *Rios* v. *United States.*

The fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. The police must have reasonable· grounds to believe that the particular· package carried by the citizen is contraband. Its shape and design might· at times be adequate. The weight of it and the manner in which it is carried· might ·at times be enough. But there was nothing to indicate that the cartons here in issue probably contained liquor. The fact that. they contained other contraband appeared only some hours after the ·arrest. What transpired at or after the time the car was stopped· by the· officers is, as we have said, irrelevant to the narrow issue before us. To repeat, ·an. arrest is not justified by what the. subsequent search discloses. Under our system suspicion is not enough for . an officer to lay hands on a citizen. It is better, so the . Fourth Amendment· teaches, that the guilty sometimes go free than that citizens be subject to easy arrest.

The fact that the suspects were in an automobile is not enough. *Carroll* v. *United States, supra,* liberalized the rule governing searches when a moving vehicle is involved. But that decision merely relaxed the requirements for a warrant on· grounds of practicality. It did not dispense with the need for probable cause.

*Reversed.*

MR. JUSTICE BLACK concurs in the result.

MR. JUSTICE CLARK, whom. THE CHIEF JUSTICE joins, dissenting.·

The Court decides this case on the narrow ground that the arrest took place at the moment the Federal Bureau of Investigation agents stopped the car in which petitioner was riding and at that time probable cause for it did not exist. While the Government, unnecessarily it seems to me, conceded that the arrest was made at the

time the car was stopped, this Court is not bound by the Government's mistakes.*

The record shows beyond dispute that the agents had received information from co-defendant Pierotti's employer implicating Pierotti with interstate shipments. The agents began a surveillance of petitioner and Pierotti after recognizing them as they came out of a bar. Later the agents observed them loading cartons into an automobile from a gangway up an alley in Chicago. The agents had been trailing them, and after it appeared that they had delivered the first load of cartons, the suspects returned to the same platform by a circuitous route through streets and alleys. The agents then saw petitioner load another set of cartons into the car and drive off with the same. A few minutes later the agents stopped the car, alighted from their own car, and approached the petitioner. As they did so, petitioner was overheard to say: "Hold it; it is the G's," and "Tell him he [you] just picked me up." Since the agents had actually seen the two suspects together for several hours, it was apparent to them that the statement was untrue. Upon being questioned, the defendants stated that they had borrowed the car from a friend. During the questioning and after petitioner had stepped out of the car one of the agents happened to look through the door of the car which petitioner had left open and saw three cartons stacked up inside which resembled those petitioner had just loaded into the car from the gangway. The agent saw that the cartons bore Admiral shipping labels and were addressed to a company in Cincinnati, Ohio. Upon further questioning, the agent was told that the cartons

---

*It may be that the Government is doing some wishful thinking in regard to the relaxation of the standards incident to the "probable cause" requirement by making this a test case. We should not lend ourselves to such indulgence.

were in the car when the defendants borrowed it. Knowing this to be untrue, the agents then searched the car, arrested petitioner and his companion, and seized the cartons.

The Court seems to say that the mere stopping of the car amounted to an arrest of the petitioner. I cannot agree. The suspicious activities of the petitioner during the somewhat prolonged surveillance by the agents warranted the stopping of the car. The sighting of the cartons with their interstate labels in the car gave the agents reasonable ground to believe that a crime was in the course of its commission in their very presence. The search of the car and the subsequent arrest were therefore lawful and the motion to suppress was properly overruled.

In my view, the time at which the agents were required to have reasonable grounds to believe that petitioner was committing a felony was when they began the search of the automobile, which was after they had seen the cartons with interstate labels in the car. The earlier events certainly disclosed ample grounds to justify the following of the car, the subsequent stopping thereof, and the questioning of petitioner by the agents. This interrogation, together with the sighting of the cartons and the labels, gave the agents indisputable probable cause for the search and arrest.

When an investigation proceeds to the point where an agent has reasonable grounds to believe that an offense is being committed in his presence, he is obligated to proceed to make such searches, seizures, and arrests as the circumstances require. It is only by such alertness that crime is discovered, interrupted, prevented, and punished. We should not place additional burdens on law enforcement agencies.

I would affirm the judgments on the rationale of *Brinegar* v. *United States,* 338 U. S. 160 (1949), and *Carroll* v. *United States,* 267 U. S. 132 (1925).