Memorandum by the Court. Judgment of conviction reversed on the facts and the law, the information dismissed and the fine remitted. The arrest was the product of an illegal search and seizure, which was not made legal by what it disclosed (United States v. DI RE, 332 U. S. 581, 595). The officers had no probable cause for the arrest when they stopped the car. (Henry v. United States, 361 U. S. 98; see, also, Mapp v. Ohio, 367 U. S. 643; People v. Loria, 10 N Y 2d 368.)
Bin gel, P. J. and Matzkin, J., concur; Creel, J., dissents in following opinion: The facts of this case place it squarely in that area where there is much uncertainty in the law as to just what police identifications, investigations and checks prior to arrest are so constitutionally unreasonable, in a metropolitan area, as to render inadmissible any evidence secured thereby.
The arresting officer had the defendant, while driving his car, under observation on Westchester Avenue in the vicinity of Sims on Street in the county of The Bronx in this city at about 11:35 p.m. on August 29, 1961. The third time this defendant drove “ up and down on — crossing up and down on Westchester Avenue ” the officer approached the defendant and asked the defendant for his license and registration. The officer observed on the defendant’s lap inside the car and in plain view three slips of paper which he recognized to be policy slips. The officer pointed to the slips and asked if they were policy slips. The defendant admitted that they were policy slips and handed them to the officer. The officer thereupon arrested the defendant.
To an experienced police officer it would be known that this area had one of the highest incidents of crime in this metropolitan city — that at this late hour the strange driving activity of the defendant in this area might well have been that of a gambler “taking action” or of a burglar “on the prowl.” In this setting was the police officer’s action in requesting license and registration for identification so unreasonable as a matter of law as to render inadmissible contraband which he saw in plain view? I, for one, do not believe so; though my brethren on this Bench disagree. As I read Henry v. United States (361 U. S. 98), the Supreme Court therein indicated in its opinion that similar police action in such a setting as this might have been reasonable and lawful, though it held the arrest and seizure therein unreasonable because it had taken place in a quiet residential area. However that may be our *197 diversity of opinion is but symptomatic of the uncertainty in the law as to the constitutional reasonableness of prearrest police inquiries, checks, requests for identification, routine traffic inquiries, requests to visit the nearest station house for verification, inquiries where crowds collect in tension area, etc. This uncertainty in the law exists in that very sensitive and friction-fraught area of human relationship where the law through its enforcing agencies reaches out among the citizenry to protect the citizen from the criminal and to separate the latter for discipline from the former whose duty it is to protect. In this area it has been my saddening observation that but a small acorn of human error, misunderstanding or uncertainty on the part of the citizen or the law-enforcing agent as to rights and duties can suddenly grow out of all proportion into great oaks of serious offenses and crimes, assaults, the resisting of an officer by brutal force, the securing of submission by “ reasonable force ” or even worse. The mandate of the Mapp v. Ohio (367 U. S. 643) case has, alas, but created more uncertainty in this friction-fraught area. For it is not known there from just how much of the Federal case law on search and seizure, much of which has been developed in districts and circuits predominantly agricultural, is properly applicable in metropolitan areas.
In metropolitan areas highly organized police forces, practices, methods and techniques have been developed to combat a highly organized syndicated criminal class, and in such metropolitan areas such police practices and methods are made necessary by the peculiar conditions which therein prevail; they serve a community need in such areas, courts might well find such practices to be constitutionally reasonable-, but in less complicated areas such practices are most probably both unnecessary and unreasonable.
Could a Judge of this court which throughout its long history has struggled to administer justice in this friction-fraught area, and which is shortly to go out of existence in a reorganization of New York courts, pray, the court which has, on constitutional grounds, assumed the supervision of metropolitan courts and metropolitan law-enforcing agencies, to formulate the ground rules as to prearrest, identifications, checks, investigations, searches, seizures, arrests and determine and make clear just which of these established metropolitan police practices meet the constitutional requirements of “ reasonable ” in metropolitan areas? That court, in the area of events subsequent to an arrest has eliminated uncertainties in the law which may have existed prior to its opinion in Agnello v. United States (269 U. S. 20) but that case appears, and is generally cited and believed *198 by Bench and Bar, to relate solely to searches after an arrest, though the language of the opinion states £< incidental thereto.” While incident might well be interpreted to reasonably include certain police practices which accompany or even precede the arrest, such an interpretation would come with the best grace from a court of the highest authority.
It is in the hope that the attention of higher courts may be focused on this uncertainty in the law described above in this friction-fraught area of human relationships in metropolitan society that this opinion has been written.
Judgment reversed, etc.