**UNITED STATES ex rel.
Robert POULSON**

v.

**David N. MYERS.
Misc. No. 3009.**

United States District Court
E. D. Pennsylvania.

Sept. 17, 1965.

Martin B. Pitkow, Philadelphia, Pa., for petitioner.

James C. Crumlish, Jr., Dist. Atty. of Philadelphia County, Philadelphia, Pa., for respondent.

DAVIS, District Judge.

The relator was convicted of burglary by the Court of Quarter Sessions of the Peace of Philadelphia County and was sentenced to two to seven years in prison. Having exhausted his State remedies, he now petitions this Court for a Writ of Habeas Corpus, on the ground that the evidence introduced against him at trial was the product of an illegal search and seizure in violation of the Fourth and Fourteenth Amendments of the Constitution.

During the latter part of 1959, there had been a large number of burglaries in the Northeast section of Philadelphia and in neighboring Abington Township. On December 4, 1959 at 8:20 P.M. two police officers on a patrol in the Northeast stopped an automobile with New Jersey license plates for "a routine check." Upon seeing the occupants, the officers recognized them as Robert Poulson and the two Blaney brothers, all recognized by the officers as reputed "professional burglars." As soon as they had checked Poulson's registration cards, they ordered each one of the men out of the automobile and put them up against a nearby fence. One of the officers searched the vehicle although he did not have a search warrant, and found, among other items, fifteen silver dollars. The three men were then taken into custody.

At the time relator was stopped, the police had not received any report of a burglary that evening and had not suspected the relator in connection with the crime of which he was subsequently convicted. Moreover it was not until 10:00 P.M. or an hour and a half later, that the burglary was reported, and it was learned that the silver dollars found in the search had come from that source.

The question presented therefore is whether the police had probable cause to stop and search the vehicle which the relator was driving when the basis for the police action was the reputation of the occupants as burglars and the vehicle's presence in a neighborhood which was presently experiencing a high incidence of burglaries.

The relator relies on Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed. 2d 142 (1964), a case with similar facts to those involved here. There, the petitioner was driving his car in Cleveland when the police accosted him and ordered

him to pull over to the curb. The officers knew that the petitioner had a record in connection with games of chance, but they had not seen him engaged in any illegality and did not have a report that he was presently involved in such activity. Although the officers had neither an arrest warrant nor a search warrant, they proceeded to put him under arrest and to search his car but found nothing. Finally at the police station, they searched him and found "clearing house slips" on his person. The Supreme Court of Ohio found the search constitutionally valid as incident to a lawful arrest. The United States Supreme Court reversed, holding that the search was illegal. It declared that the validity of the search depends on the validity of the arrest, and this in turn depends:

"upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." [1]

In Beck, the defendant had an unsavory reputation like the relator here, but, that factor was held to be insufficient to constitute probable cause.

However, in the present case, we have the added element of a high incidence of crime in the neighborhood which apparently was not an important factor in Beck although no mention is made of it one way or the other. In this regard the District Attorney has relied on Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In that case two federal prohibition agents had posed as buyers of whiskey, and the two defendants had come to their apartment in Grand Rapids, Michigan and agreed to sell them several cases of it. They did not return with the liquor at the appointed time probably because they had seen through the disguise, but the agents had observed the kind of automobile the defendants had driven and had recorded its license number. Subsequently, while patrolling the highways between Grand Rapids and Detroit, the agents saw the defendants driving toward Detroit and tried to follow, but they lost their track. Several months later, they again saw the defendants, this time driving westward presumably from Detroit. They stopped them, searched their car, and found illegal liquor. The Supreme Court was faced with the question of probable cause for the search and held that the constitutional standard was met under the circumstances. It laid great stress on the fact that the Detroit area and its neighborhood along the Detroit River, which is an international boundary, was well known as a center for the illegal importation of liquor into the United States. The Carroll case is similar to the one at bar in that the law enforcement officials knew that there was a high incidence of crime in the area where the search was effected. Nevertheless, the officers in Carroll unlike the police in the present case, had first hand knowledge of the defendant's illegal conduct.

A more recent case which thoroughly discussed and further elucidated Carroll was Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). There federal agents were parked in a car alongside a highway a few miles west of the Missouri-Oklahoma state line when the defendant drove by in a westerly direction. One of the agents had arrested him five months earlier for illegally transporting liquor; had seen him loading liquor into a motor vehicle in Joplin, Missouri on at least two occasions during the preceding six months; and knew him to have a reputation for hauling liquor. Recognizing both the driver and the car as it passed, the agents gave chase, stopped him, and searched the automobile. The defendant claimed that the evidence introduced against him was seized from the vehicle in violation of the Fourth Amendment, and the crucial question became whether the officers had had probable cause to conduct the search. In

---

1. P. 91 of the Opinion, 85 S.Ct. p. 225.

upholding the search, Brinegar compared its factual situation with that of Carroll. In each, the agents had recognized the occupants and the vehicle "from recent personal contact and observation, as having been lately engaged in illicit liquor dealings. * * * Each driver was proceeding in his identified car in a direction from a known source of liquor supply toward a probable illegal market." The Court concluded that the important facts in Brinegar, were so close to those of Carroll that the latter case was controlling. Yet it warned:

"This does not mean, as seems to be assumed, that every traveler along the public highways may be stopped and searched at the officers' whim, caprice or mere suspicion. The question presented in the Carroll case lay on the border between suspicion and probable cause."[2]

Brinegar and Carroll both involved searches in areas where there was a great deal of illegal liquor traffic. Similarly, the present case involved a neighborhood where there had been more than the normal number of burglaries. However, in Brinegar and Carroll the police had personal knowledge of the defendant's activities while in the instant case the officers only knew of their reputations as burglars and nothing further. Here they did not even have a reliable report or trustworthy information that the relator here was engaged in illegal activity. See United States v. Bianco, 189 F.2d 716 (3d Cir. 1951). Cf. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

The two elements extant in the instant action are the vehicle's presence in an area of a high incidence of burglaries and the reputation of its occupants as burglars. The Beck case held that the latter alone was not sufficent to constitute probable cause. Carroll and Brinegar required at least a neighborhood where a large number of crimes had been committed and the searcher's personal or intimate knowledge of the defendant's prior criminal conduct.

Since Brinegar declared that its set of facts was the minimum requirement for probable cause, it is readily apparent that the search of the relator's automobile in the present action did not meet the standards of the Fourth and Fourteenth Amendments, and consequently under Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961), the evidence on which the relator's conviction rests was inadmissible.

## ORDER

And now, this 17th day of September, 1965, it is hereby ordered and decreed that the relator's petition for a Writ of Habeas Corpus is granted.

---

2. P. 177 of the Opinion, 69 S.Ct. p. 1311.