**UNITED STATES of America, Appellee,**
v.
**Anthony J. NORI and John T.
McCarthy, Appellants.**
**No. 15093.**

United States Court of Appeals
Seventh Circuit.

Nov. 12, 1965.

Rehearing Denied Dec. 1, 1965.

George F. Callaghan, Chicago, Ill., for appellants.

Edward V. Hanrahan, U. S. Atty., John Powers Crowley, John Peter Lulinski, Douglas Brown, Patrick J. Hughes, Jr., Asst. U. S. Attys., Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

Defendants Anthony J. Nori and John T. McCarthy were charged in a one-count indictment with a violation of Section 659, Title 18, U.S.C.A.[1] Following a plea of not guilty, defendants were tried by the court, without the intervention of a jury. The trial court found both defendants guilty and sentenced each of them to a term of four years. Defendants appealed from the judgment of conviction and sentence.

Specifically, the indictment charged that on or about May 14, 1964, defendants did unlawfully and knowingly have in their possession certain merchandise of a value in excess of $100, to-wit: 14 cases of Anacin, 2 cases of Dristan and 1 case of Bisodol, which goods were taken away from the platform and depot of Brady-Days Motor Freight, Inc., Chicago, Illinois,[2] at which date the said goods were moving as a part of an interstate

1. "§ 659. Whoever * * * steals, or unlawfully takes, carries away * * * from any * * * platform or depot * * * with intent to convert to his own use any goods or chattels moving as * * * a part of * * * an interstate * * * shipment * * *; or
"Whoever * * * has in his possession any such goods or chattels, knowing the same to have been * * * stolen;

"Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both * * *."

2. This company is otherwise variously referred to in the briefs and record as Brady-Days Motorfrate, Inc., Brady-Day Motor Freight, Inc., Brady-Days and Brady-Day.

shipment from Whitehall Laboratories, Elkhart, Indiana, to Gibson Products Company, Grand Junction, Colorado; and that defendants knew the same were stolen.

Prior to trial, defendants filed a motion to suppress the evidence. Government answered the motion, admitting that the Federal Bureau of Investigation agents, in seizing the goods in question, had neither an arrest warrant for defendants nor a search warrant, but denied that the arrests were made illegally. A hearing was held thereon, after which the trial court denied the motion to suppress.

On oral argument, defendants state that the sole question for decision on this appeal is whether there was an illegal search and seizure.

*Hearing on Motion to Suppress*

F.B.I. Agent Parfet, acting squad supervisor on the morning of May 15, 1964 received a telephone call in his office from an informant, whose voice he recognized, advising him that defendants, employees of Brady-Day Motor Freight, Inc., a trucking company with terminal facilities in Chicago, had in their possession pharmaceutical products, including Anacin, stolen from Brady-Day and that they intended to dispose of such products that day. At that time, Agent Parfet knew defendants were employed at Brady-Day as dock hands and had been suspects in prior thefts of merchandise from the dock there.

Shortly thereafter, on the same morning, Agent Parfet had a conference in the F.B.I. office with Agents Weatherwax, Lee and Noonan. He informed them of the above stated information he had received and of the suspected involvement of defendants.

The agents then proceeded to the vicinity of 3200 South Halsted Street in Chicago. Agents Weatherwax and Noonan were riding together. About noon, Agent Weatherwax recognized defendant Nori driving a 1964 white Chevrolet Impala station wagon, with defendant McCarthy as a passenger. The agents followed the station wagon and observed it enter an alley and proceed some distance down the alley. Nori backed the station wagon into a garage opening onto the alley at the rear of the McCarthy residence at 3453 South Lituanica Street. The garage doors were then closed.

Agent Weatherwax walked down the alley to the garage, stood outside it in the alley, heard male voices inside the garage and heard the movement of cartons or what sounded like merchandise being moved about inside. He then went to an open garage directly east across the alley the waited.

About 12:15 p. m., Agent Weatherwax observed the garage door being opened from the inside by defendant McCarthy. Nori drove the same white station wagon into the alley and stopped it outside the garage. McCarthy pulled the garage door down. Agent Weatherwax was about 25 feet from the station wagon when Nori stopped it in the alley.

Agent Weatherwax observed a quantity of cartons of pharmaceutical products in the rear of the station wagon, where he had previously observed nothing. He started walking toward the station wagon and as he did so, he motioned to Agent Noonan, who was walking down the alley toward the station wagon, to join him. When Agent Weatherwax was about 10 to 15 feet away from the vehicle, he observed that some of the cartons in the rear of the station wagon bore the word "Anacin" in large block letters, and that some of the cartons had what appeared to be shipping labels removed from them.

As Agent Noonan approached the station wagon, he observed the cartons piled in the rear, saw the word "Anacin" on them and that some of the cartons had what appeared to be shipping labels cut off from them.

At this time, Agent Weatherwax said to defendants: "Just a minute, we want to talk to you about this matter." The agents identified themselves as F.B.I. agents and defendant Nori backed the station wagon into the garage. Defendants and the two agents had a conversa-

tion with the agents standing in the alley in front of the station wagon.

At that time, the agents again identified themselves, warned defendants· of their right not to make a statement and their right to have a lawyer if they wanted one. No statements were made by the agents regarding an arrest or that defendants were then under an arrest. The agents did ask defendants what they were doing there and how the merchandise got in the station wagon. Defendants replied that they did not know what the merchandise in the rear of the station wagon was and that they did not know how it got there.

Agents Weatherwax and Noonan were joined at the scene by Agents Lee and Parfet. Agent Lee exhibited to the other agents some torn waybills he had just found in a trash can next to the McCarthy garage. They showed a shipment of 79 cartons of drug products from Whitehall Laboratories, Elkhart, Indiana to Gibson Products Company, Grand Junction, Colorado. Agent Lee also found a loan company advertisement with McCarthy's name on the back of it.

Agent Parfet then left the scene, went to a nearby corner and telephoned the terminal manager at Brady-Day who informed Parfet there were only 62 cartons of such merchandise on the terminal dock and that 17 cartons and the bills for the entire shipment were missing. Agent Parfet returned to the scene and informed the other agents of this information. Agent Weatherwax entered the garage and picked up a razor blade in a holder.

At that point, after completion of the foregoing preliminary investigation, Parfet for the first time requested defendants to accompany the agents to the F.B.I. office and they proceeded there.

### Evidence at the Trial

Following denial of the motion to suppress, the case proceeded to trial. The F.B.I. agents testified as above set out. By other witnesses from Whitehall Laboratories and Brady-Day, Govern-ment established the shipment of 79 cartons of pharmaceuticals and that the seized merchandise was part of that shipment. Government showed that both defendants worked as dock hands at Brady-Day; that McCarthy had unloaded the Whitehall Laboratories shipment in question on the dock and Nori had loaded a shipment out of the terminal; that Nori had worked at the terminal for about four years and McCarthy for about ten or twelve years.

On the basis of the foregoing, the trial court denied the motion to suppress and subsequently found defendants guilty of the crime charged in the indictment.

We hold that the trial court did not err in so ruling, under the undisputed facts in this case.

Defendants contend there was an unlawful arrest and search and seizure, relying primarily on Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134 (1959); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L. Ed.2d 441 (1963); Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); and Jackson v. United States, 118 U.S.App.D.C. 341, 336 F.2d 579 (1964).

Even a cursory examination of these authorities makes it clear that they do not support defendant's contentions here and are readily distinguishable from the case at bar.

We agree with Government that no arrest was made until the F.B.I. agents completed their preliminary investigation at the McCarthy garage.

██ Whether the arrest occurred at the beginning of the interrogation or at its conclusion, it is clear to us that the agents had probable cause to make an arrest at either time. There was sufficient corroboration of the information received from the informant. The seizure of the merchandise in question was valid. Cali v. United States, 1 Cir., 338 F.2d 974, 977–978 (1964); United States v. Sorce, 7 Cir., 325 F.2d 84, 86 (1963), cert. denied, 376 U.S. 931, 84 S.Ct. 701, 11 L.Ed.2d 651 (1964).

The trial court properly conducted a hearing on the motion to suppress, prior to trial. It stated its grounds for finding probable cause. There is ample support in the record for denial of the motion.

We have considered other contentions of defendants although not urged on oral argument, and find them to be without merit.

The agents conducted themselves with admirable propriety and with full regard for the rights of defendants. Their conduct evidenced a complete awareness of their official responsibilities and these were properly discharged. They are to be commended for observing the safeguards heretofore suggested by the courts.

The judgment of the district court is affirmed.

Affirmed.

Swygert, Circuit Judge, dissented in part.