**UNITED STATES of America**

v.

**Sharon Y. WILLIAMSON, Appellant.**

**No. 24660.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1971.

Decided March 7, 1972.

Petition for Rehearing Denied
April 20, 1972.

Mr. William W. Taylor, III, Washington, D. C., with whom Messrs. Charles D. Hickey and Stuart S. Greenfeig, Washington, D. C. (all appointed by this court) were on the brief, for appellant.

Mr. Roger M. Adelman, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and John G. Gill, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before TAMM and MacKINNON, Circuit Judges, and A. SHERMAN CHRISTENSEN,* U. S. Senior District Judge for the District of Utah.

TAMM, Circuit Judge:

The question presented is whether a police officer, possessing information based upon previous contact with appellant, allegedly obtained illegally, has probable cause to arrest appellant when he confronts her in her own apartment concealing contraband narcotic drugs when he is present on official business. We are also asked to determine whether

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

appellant should be given the benefit of the *dicta* in our opinion Watson v. United States, 141 U.S.App.D.C. 335, 439 F. 2d 442 (1970) (*en banc*) when she was convicted two months prior to the issuance of that decision. Appellant's allegation of error arises from the refusal of the district court to grant her motion to suppress certain evidence. Finding no error in the district court's ruling and finding that *Watson* is inapplicable to the case at bar, we affirm appellant's conviction.

Appellant was convicted on the first count of a two count indictment charging violation of 26 U.S.C. § 4704(a). The second count, charging violation of 21 U.S.C. § 174, was dismissed by the Government at the time of sentencing. At commencement of the trial appellant's counsel made a pre-trial motion to suppress evidence which was denied by Judge Pratt. The judge then tried the case on the evidence produced at the hearing on the pre-trial motion and on the stipulations of counsel. Judge Pratt, after waiver of jury trial, found appellant guilty and sentenced her to a term of two to six years.

▮ The basic question raised on appeal is whether the arrest of Miss Williamson can be allowed to stand since the arresting officer previously learned of possible criminal narcotic activity on her part by executing an allegedly illegal search warrant. The pertinent facts reveal that Detective Taylor submitted two affidavits to Judge Pryor, of the then Court of General Sessions, on March 17, 1969. These affidavits were in support of his request for two search warrants and two arrest warrants. One of these search warrants was for apartment 208 at 1423 Harvard Street, N.W. and was accompanied by an arrest warrant for Charles Harris. The affidavit alleged that Harris, operating from an apartment listed as belonging to appellant, sold narcotics to a police informant on several occasions during the week prior to the issuance of the affidavit. Taylor testified at the hearing on the pre-trial motion that he typed this affidavit himself. The second affidavit was not typed by Taylor but rather by a secretary of the police department's Narcotic Squad. In typing this second affidavit the secretary used the first affidavit, typed by Taylor, as a model and made certain changes in accordance with the instructions furnished her by Taylor. This second affidavit was used to support issuance of a search warrant for apartment 201 in the same building and an arrest warrant for one Clarence Harris. This affidavit, as the one typed by Taylor, charged that the police informant made illegal narcotics purchases from Clarence Harris in apartment 201 prior to the issuance of the affidavit and that this apartment, too, was listed to appellant.

At the hearing on the pre-trial motion before Judge Pratt, Taylor admitted that the second affidavit did contain certain errors including listing apartment 201 to appellant. He also admitted that the second affidavit contained certain other material errors with respect to the description of apartment 201. He did assert that all information in the affidavit relating to apartment 208 was correct and also that his informant did make two narcotic buys in apartment 201 and one in apartment 208 during the time prescribed in the affidavits. Based on the affidavits Judge Pryor authorized four warrants, two arrest and two search, on March 17, 1969. Taylor executed these warrants on March 18, 1969, searching both apartments 208 and 201 and arresting Clarence Harris. In searching appellant's apartment 208 Taylor uncovered a quantity of narcotics and therefore also arrested appellant who was present during his search. The arrest warrant for Charles Harris, however, remained outstanding.

Taylor received information on March 30 to the effect that Charles Harris was then present at apartment 201 at 1423 Harvard Street, N.W. Proceeding to assemble a raiding party, Taylor arrived at the apartment building at five in the morning. Upon arrival at the building Taylor sent some of his party to the

rear of the building in order to observe the rear windows of apartments 201 and 208. In the moments that followed, Taylor knocked at the door to apartment 201 and announced both his presence and purpose. He heard a great deal of commotion and toilet flushing in the apartment. Three of those in the apartment, Vincent and Antoinette Harris and Harold Legon left the apartment via a fire escape and commenced to run along the rear of the building. Taylor forced his admittance to apartment 201 where he found Charles Harris and several others, all of whom he placed under arrest. Following this scenario Taylor left apartment 201 and headed for apartment 208. He knocked on the door and in response to an inquiry from appellant identified himself and was admitted. At this time another officer was following the Harrises and Legon through the rear window into apartment 208. Taylor assisted this officer in bringing the would-be escapees into apartment 208. Then turning his attention to appellant he noticed that she had several prescription type vials in her hand and that each contained pills which were white in color. Based on his vast experience in the narcotics area, and his earlier contact with appellant a few days prior, Taylor concluded that these pills were indeed narcotics. After asking appellant to surrender the vials to him, and telling her that he could have a policewoman come up to thoroughly search her if she didn't cooperate, appellant surrendered the vials to Taylor. She was then placed under arrest. The capsules were tested on the scene by an officer of the Narcotics Squad and were found to contain narcotics; to wit, 1064 miligrams of heroin hydrochloride.

In appellant's version of the occurrence in her apartment, she contended that she asked Taylor in to arrest Legon and that Legon had dropped the vials which Taylor found in her possession. She testified that she was attempting to secrete them from Taylor because of her recent trouble involving narcotics. Appellant, through her counsel, made three contentions with reference to her motion to suppress:

1. Her arrest lacked validity since it was based, at least in part, on information gained in executing the March 18 search warrants. Appellant contends that the warrants issued for apartment 201 and 208 were so contradictory as to be "totally incredible."

2. Detective Taylor's entry of her apartment without a warrant was illegal.

3. Even if Taylor was legally in her apartment he had no right to search her.

The court considered these contentions and Judge Pratt ruled that appellant consented to Detective Taylor's entry into her apartment and that his seizure of the narcotics capsules was legal since the contraband was in appellant's hand and, therefore, in clear view of the officer. With reference to the warrants, the trial judge felt that it was unnecessary for him to make any ruling on them since the warrant initially used to enter apartment 208 was executed by Taylor and that it was clearly valid. We concur in his findings.

The most significant question for us to answer is whether Detective Taylor had probable cause to justify a reasonable belief that the capsules in appellant's hands contained a narcotic substance. Let us again state the definition of probable cause that we set out in Bailey v. United States, 128 U.S.App.D. C. 354, 389 F.2d 305 (1967).

Probable cause is a plastic concept whose existence depends on the facts and circumstances of the particular case. It has been said that " '[t]he substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' " Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). Much less evidence than is required to establish guilt is necessary. Draper v. United States, 358 U.S. 307, 311–312, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959). The standard is that of "a reasonable, cautious and

prudent peace officer" and must be judged in the light of his experience and training. Bell v. United States, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86, *cert. denied,* 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958). The police must have enough information to "warrant a man of reasonable caution in the belief" that a crime has been committed and that the person arrested has committed it. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). *See also* Henry v. United States, *supra,* 361 U.S. [98] at 102, 80 S.Ct. 168, [4 L.Ed.2d 134]. A finding of probable cause depends on the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, *supra,* 338 U.S. at 175, 69 S.Ct. [1302] 1310.

128 U.S.App.D.C. at 357–358, 389 F.2d at 308–309.

It is not possible to determine whether Detective Taylor had probable cause by undertaking an analysis of each factor confronting him separately. This court must look to the totality of the factors confronting the officer. Only after viewing the total picture can a valid determination be made. *See* Dixon v. United States, 111 U.S.App.D.C. 305, 296 F.2d 427 (1961). Considering the totality of the evidence it is impossible for us to conclude that probable cause was absent in this case. Taylor knew of appellant's previous connection with narcotics; he was pursuing a fugitive in a narcotic's raid; he observed appellant holding small prescription-type vials in her hand and noted they appeared to contain pills he believed to be narcotics; appellant attempted to secret these vials by placing them under her arm; appellant initially refused to disclose the vials to Taylor. Under these circumstances an experienced narcotics officer had every reason to believe that the items which appellant was attempting to hide were contraband. This all occurred in the plain sight of a trained police officer; for him to fail to take action under these circumstances would amount to nothing less than serious dereliction of his duty.

Appellant raises various questions based on the apparent contradictions in the two affidavits presented to Judge Pryor by Detective Taylor. It is not necessary for us to undertake extended consideration of these affidavits. There was no question but that the warrants issued based on the affidavit for apartment 208 were correct and that they were in fact accurate in every respect. Appellant was apprehended in apartment 208. The affidavit for apartment 201 is without moment in this case. Had appellant been apprehended in apartment 201 she would then have been in a position to assert that the affidavit upon which the warrants were issued were contradictory and erroneous. We note, however, in our own examination of the affidavits that if we were to strike all of the inconsistent matter in both affidavits, *there would be enough material remaining on which a magistrate could issue a warrant.*

We comment only briefly on appellant's contention that Taylor was asked into her apartment only to arrest Legon and for no other purpose. It is certainly apparent to the court that once an officer is lawfully on the premises his actions, so long as they remain lawful, are legal. Appellant could not invite Detective Taylor in to make an arrest and assume that he would, or could, close his eyes to either illegal conduct or illicit drugs in his presence. We find such imaginative reasoning incredulous and note thankfully that it is not by the mere whim of men that law is made.

Appellant's final contention is that Judge Pratt erred in failing to sentence her under Title II of the Narcotic Addict Rehabilitation Act, 18 U.S.C. § 4251(f) (4) in accordance with our teaching in Watson v. United States, *supra.* However, the probation report indicates that appellant was not an addict at the time of sentencing and consequently cannot avail herself of part IV of our *Watson* decision or of the teach-

ing in Chicquelo v. United States, 146 U.S.App.D.C. 381, 452 F.2d 1310 (1971) (*en banc*).

The judgment of the district court is Affirmed.