Franklin W. Morton, Jr., J.
Defendant was indicted for “ unlawful possession and transportation for purposes of sale of unstamped and unlawfully stamped packages of cigarettes as a felony. ’ ’ At the time of his arrest, the People seized a quantity of unstamped cigarettes. Defendant moves to suppress.
*402 Upon the hearing, the People presented Special Investigator Blandeburgo. He testified in substance:
That he is a retired sergeant of the Police Department of the City of New York and is now a special investigator for the State of New York, Cigarette Tax Unit and has been so employed for four years; that prior to assuming his duties, he was given two weeks ’ training at the Police Academy in Albany and since then intermittent in-service and other training; that he made between 40 and 50 arrests and assisted in about 150 more in cigarette cases as a result of which he has acquired a certain amount of expertise in the field and that he was able to identify packages of smuggled and unstamped cigarettes.
On the basis of the above, the witness was declared a qualified expert in his field.
The prosecution then offered for identification a package (approximately 15 inches x 15 inches x 30 inches), the outer wrapping of which was brown paper sealed with mastic tape. In discussing the exhibit, the witness gave the court a dissertation on cigarette packaging. He testified that they were originally packed at the factory in cases of 60 cartons; that cigarette smugglers or “ dealers ” repackaged them in lots of 30 cartons per package known as “ half cases ” and that they were generally wrapped in the same manner as the package in evidence.
Regarding the facts leading up to the arrest, he testified that he was instructed by his supervisor to maintain a surveillance at premises 140 Bay 54th Street, Brooklyn, New York, starting Monday, December 1, 1972. His testimony was: “ That John Brown assigned me to an assignment for Monday morning, 8:00 o’clock which was December 4th; he had known that untaxed cigarettes was being trafficked again at that particular address, 140 Bay 54th Street.”
That pursuant to this directive, he, together with a partner, took a position in his unmarked car at a point 150 feet opposite said location; that he saw a man, now the defendant before this court, pull up in front of the house in a “ Jersey Chevy ”; that he got out of his car and spoke to a woman, the wife of a man he had previously arrested at the same premises for possessing contraband cigarettes; that he then backed his car into the private driveway about 30 to 35 feet; got out of his car and removed a package, as observed from the distance through binoculars, which, in the opinion of the witness, contained unstamped cigarettes; that he proceeded to the house in his car, saw five additional packages on the ground and that he was of the opinion “ that a felony was being committed in his presence.” He placed the defendant under arrest and confiscated *403 the packages plus the balance of the contraband which was in the rear of the car and in the trunk, in all, seventeen “ half cases ” plus two packages.
On cross-examination information was elicited to the effect that no trade name or other identifying marks were on the packages; nor was there anything to indicate that the contents were taxed or untaxed cigarettes and that he did not know the defendant.
On inquiry by the court, the witness admitted that he made the arrest on private property about 35 feet into the driveway. Further, when asked whether he looked into any of the packages or whether he asked the defendant what the packages contained, his answers were in the negative.
The question is whether there was probable cause upon which to base the arrest and seizure.
Oases on the subject of arrest, search and seizure are numerous, but their decisions turn on the particular facts presented in each situation.
One case with a set of facts very close to the one at bar is People v. Corrado (22 N Y 2d 308 [1968]). In that case, the police came to the location, a corner in Brooklyn, as the result of a tip received from an undercover member of the Police Department, that drugs would be passed between the hours of 9:00 p.m. and midnight. The officers arrived at 8:30 p.m. and had been waiting about an hour when the defendant’s car pulled up and parked directly across the street. In substance: the officers observed three teenagers sitting in a car in the early hours of the night. One of them left the car, walked about three car lengths down the street to a second car, bent down for a few seconds and then returned to his companions in the first car. He was observed to pass some envelopes to the driver and after a brief period, the car started to pull away.
Detective Stoehr of the Narcotics Bureau gave uncontested testimony that from his experience as an investigator, he had never seen loose marijuana in small quantities passed or sold in envelopes other than the type of envelope involved here.
Judge "Keating, speaking for the Court of Appeals said (22 N Y 2d, at p. 311):
“ The sole question raised on this appeal is whether there was probable cause to arrest. * * * The People do not and cannot contend that the fruits of their search of the car can be used as a basis to establish probable cause. Their position is simply that there is sufficient evidence to sustain the arrests.”
“ It cannot be seriously contended, and we do not understand the People to argue, that the objective conduct observed by the *404 officers constituted probable cause. There is nothing suspicious or even particularly unusual about the overt activities of the three youths here.”
Continuing (22 N Y 2d, at p. 313): “ This is in sharp contrast to the translucent glassine envelope which has come to be accepted as the telltale sign of heroin. Still, even in the case of the glassine envelope, it has never been held that the mere passage of such an envelope establishes probable cause. We conclude, therefore, that the testimony concerning the use of these common envelopes for marijuana does not raise the level of inference from suspicion to probable cause.”
The court further held the People’s “ argument is defective because the envelopes could have contained any number of non-contraband items.”
Corrado is indeed a stronger case by comparison for the following reasons:
1. That case was commenced with a “tip from an undercover ” officer; here we have merely a directive by a supervising officer. As was Stated in People v. Horowitz (21 N Y 2d 55, 60): “ This record does not show that any of the law enforcement officers had facts before them sufficient to indicate that * * * the,police had other information * * * which was sufficient in itself, to constitute probable cause.”
2. In Corrado, the containers were small opaque envelopes, and the court held ‘ ‘ they could have contained any number of noncontraband ítems.” ’ Certainly, then, the larger packages as herein described could have been deliveries of a greater assortment of noncontraband merchandise, especially when such delivery is made in the month of December just prior to the Christmas holidays. This was consistent with an innocent and legitimate delivery of merchandise.
3. In Corrado, the arrest was made on the city streets whereas this arrest and seizure was made on private property.
Prom an examination of the above analysis of both cases, it is clear that the prosecution’s case in Corrado was by far much stronger, yet the Court of Appeals reversed the conviction. Relying on this authority, I am constrained to find that there was no probable cause for the arrest and seizure.
Motion to suppress is granted.
See, also, Henry v. United States (361 U. S. 98); People v. Brown (24 N Y 2d 421); Matter of Giordano v. Waterfront Comm. (37 AD 2d 854); People v. Norton (38 A D 2d 371).
The cases cited in the People’s brief have been examined and researched and found not to be applicable.