### State v. McDonald
[Cite as 2 AOA 68 ]

*Case No. 2646*
*Clark County, (2nd)*
*March 7, 1990*

*4th Amend. U.S. Const.*

*Stephen A. Schumaker, Prosecuting Attorney, 50 East Columbia Street, Springfield, OH 45502, Attorney for Plaintiff-Appellee.*

*Richard Mayhall, 721 BancOhio Building, Springfield, OH 45502, Attorney for Defendant-Appellant.*

FAIN, J.

Defendant-appellant Michael D. McDonald appeals from his conviction and sentence following a plea of no contest, for Aggravated

Trafficking. McDonald contends that the trial court should have granted his motion to suppress the evidence that formed the basis for the charge against him because it was obtained as a result of an unconstitutional search and seizure. We agree with McDonald that the search of his person for drugs was without probable cause and was therefore in violation of McDonald's rights under the Fourth Amendment to the United States Constitution. Accordingly, the judgment of the trial court will be reversed. Because it is obvious that there is insufficient evidence to convict McDonald without the drugs seized from his person at the time of his arrest, McDonald will be ordered discharged.

I

In August, 1989, police officers Rick Flemming and John McCoy heard a dispatch reporting that four black males were selling drugs out of a blue Cadillac in front of 24 West Mulberry Street. Flemming and McCoy were only a block away at that time, so they  to investigate. Just before they arrived at the scene, they noticed a blue Cadillac driving away from the scene. At the same time, they saw at the scene one white male and one black male sitting on motorcycles, with McDonald (who was not known to the officers at that time) standing in the street with a box in his hand.

As Officers Flemming and McCoy approached, McDonald turned around, saw the police cruiser, and then began walking rapidly to a house at that location.

One or two days earlier, the same officers had been called to the Imperial House on West Leffel Lane based upon the owner's report that some people were selling drugs out of his rooms. The owner let them in to an unoccupied room, being room 240. The officers found "a little bit of crack" in the bathroom in room 240. Flemming testified that the owner mentioned another, adjacent room, from which another person "could have been selling." Flemming testified that the owner had told him that Michael McDonald "rented the room." McCoy testified that their information was that McDonald was renting the room adjacent to the room in which the crack was found.

Flemming testified that he and McCoy had been told by "people" two or three times that "Dody" would be "selling." McCoy testified that twice "people" had come and told him that "Dody is dealing." However, McCoy testified that he had no knowledge of the reliability of these informants because it was the first time that he had talked with each of them.

Flemming had previously had been advised by Detective Eggers that "Dody" was Michael McDonald's "street name."

McCoy testified that 29 and 29½ West Mulberry Street were "know drug houses."

When the person who subsequently turned out to be McDonald began to walk away from the officers, he was told to stop and come back. When McDonald kept on going, he was told that the officers would go into the house after him. At this point, McDonald stopped and came over to the officers. Officer Flemming then asked him for his name, and he identified himself as Michael McDonald. This was the first time that the officers were aware that the person they had stopped was Michael McDonald.

What happened next is described in Flemming's testimony as follows:

"A. So, Mr. McDonald asked what was going on. I told him, you know, he fit the description of people supposedly selling drugs. So he gave me the box that he had, which was seven cans of beer. I looked inside of it and didn't find anything, then I patted him down.

"Q. When you say you patted him down, ask you--describe exactly what you mean by that, Officer?

"A. I felt the outside of his clothing.

"Q. Okay.

"A. So I patted him down on the right side by his right pocket. I asked him what was in there and he told me money. So I reached in his pocket and took the money out and put it right back in. When I patted his left side, I felt, you know, hard substance and it had different formations on it. So I asked him what was in there and he didn't give me no answer, and then I reached in.

"Q. Now, let me stop you. Prior to reaching in, what did you think was in that pocket?

"A. I believe it was crack."

On cross-examination, Flemming testified as follows:

"Q. Okay. When you stopped him and you conducted your search, you were looking for drugs, weren't you?

"A. Yes, sir.

The substance removed from McDonald's pocket proved to be crack cocaine. McDonald was arrested and charged with Aggravated Trafficking. He moved to suppress the evidence seized from his person. Following a hearing, his motion to suppress was overruled. Thereafter, he pled no contest, was found guilty and was sentenced accordingly.

From his conviction and sentence, McDonald appeals.

## II

McDonald's sole Assignment of Error is as follows:

"It constituted error to overrule McDonald's motion to suppress."

McDonald argues that Flemming and McCoy did not have an articulable suspicion to justify and investigatory stop. The State argues that the circumstances were sufficient to constitute articulable suspicion for the stop. We regard this issue as close, but we find it unnecessary to decide this issue.

Even if there was a sufficient basis to stop McDonald, that would not have justified a search of his person for drugs. The most that would have been permitted, in connection with an investigatory stop, would have been a pat-down for weapons. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed. 2d 889. The same circumstances would not have justified a search of McDonald's person for drugs. *Sibron v. New York* (1968), 392 U.S. 40, 88 S. Ct. 1889, 20 L.Ed. 2d 917.

Officer Flemming did not claim to have patted McDonald down in order to determine whether McDonald was armed. Flemming admitted that when McDonald was stopped and searched, Flemming was looking for drugs.

[A] police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. *Sibron v. New York*, *supra*, at 88 S. Ct. 1903.

Officer Flemming did not claim to have drawn an inference that McDonald was armed and dangerous. Officer Flemming admitted that his purpose in stopping McDonald and searching him was to search for drugs. Officer Flemming was not entitled to do so in the absence of probable cause.

While the totality of the circumstances of which Officers Flemming and McCoy were aware at the time of the stop arguably may have amounted to a to a reasonable and articulable suspicion that McDonald was involved in criminal activity, they fall short of establishing probable cause to believe that a crime had been committed and that evidence of the crime could be found upon McDonald's person. The circumstances consisted of reports from two persons, for whose reliability the officers could not vouch, that McDonald had been "dealing" drugs; a hotel owner's statement that the person in the room that McDonald had rented "could have been selling [drugs]" out of there; an unsubstantiated report that drugs were being sold out of a blue Cadillac in the area in which McDonald was found (just after the blue Cadillac had left the area); and McDonald's initial reluctance to talk to the officers. These circumstances fall short of establishing probable cause that a crime had been committed and that evidence of the crime could be found upon McDonald's person.

McDonald's sole Assignment of Error is sustained.

## III

McDonald's sole Assignment of Error having been sustained, the judgment of the trial court will be reversed. Because it is apparent that, without the suppressed evidence, there is insufficient evidence to sustain a conviction in this case, McDonald will be ordered discharged.

*Judgment reversed.*

WOLFF, P.J. and GRADY, J., Concur.

GRADY, J., Concurs:

I concur with the majority and write separately only to comment on the applicability to this case of the rule of *State v. Smith* (1989), 45 Ohio St. 3d 255, upon which appellee relies. In my view, *Smith* does not control our inquiry or decision in this case, for two reasons.

First, the particular view of Fourth Amendment considerations adopted in *Smith* proceeds largely from the determination that there had not been a seizure of the person prior to the search in question. In *Smith*, the police asked the defendant merely to "come here a minute." *Smith, supra*, at 256. The Supreme Court concluded that, without more, "a reasonable person in appellant's position would have believed he was free to leave at any time, prior to his actual arrest following the discovery of contraband." *Smith, supra*, at 258. On that basis and according to the rule of *United States v. Mendenhall* (1980), 446 U.S. 544, the defendant in *Smith* could have reasonably concluded that he was free to leave at time.

In this case, officers directed appellant to stop as he was walking away from them toward a house, and was further told by officers that if he did not stop they would come into the house

and get him. Their language clearly indicated that "compliance with (their) request might be compelled." *United States v. Mendenhall, supra,* at 554. Appellant could not have reasonably concluded that he was free to leave at any time, and there was clearly a seizure on the basis of the officers' directions to appellant. As officers had then made only an investigative stop and not a lawful arrest, they were not authorized to search appellant's person for contraband. *Terry v. Ohio* (1968), 392 U.S. 1. Even were we to construe these facts as constituting an arrest, the arrest itself and the warrantless search of appellant's person incident to it could be conducted only if the officers possessed probable cause to believe that a crime had been committed. *Henry v. United States* (1959), 361 U.S. 98.

As a send point of distinction, the nature and quality of the information possessed by the officers in *Smith* more closely conforms to standards of probable cause than did the information relied upon by the officers in this case as a pretext for their search. In *Smith,* the police observed the defendant leave the residence of Wilma Balducci, a known felon. Six months earlier, police raided the residence and discovered drug paraphernalia. Further, the officers had personally received tips from reliable informants that Balducci was dealing drugs from the location. Finally, the officers observed the defendant leave Balducci's home carrying a bag in a fashion they described as "gingerly." Given the officers' knowledge, and the observations they were personally able to make, and the totality of the circumstances, sufficient independent facts existed in *Smith* to confirm the officers' suspicions and justify their actions according to probable cause standards.

By contrast, the police here acted from no personal observations or knowledge indicating criminal activity. They relied exclusively on unsubstantiated hearsay. Several days prior, they received from a hotel manager an unsubstantiated allegation that one Michael McDonald "could have been selling" drugs out of a hotel room *adjacent* to another room in which police discovered cocaine. On the day of the arrest, the officers received a radio report that four men were dealing drugs out of a blue Cadillac. The officers did not observe the appellant in that transaction or to have any contact with the Cadillac, which they saw leaving the vicinity as they approached. At the point in time that officers seized appellant by ordering him to stop, they were not aware that he was Michael McDonald. They had no idea of his identity. Thus, nothing known to the officers at the time of the seizure of appellant, save unsubstantiated hearsay, connected appellant to any criminal activity. While officers were not prohibited from making reasonable inquiries or appellant, or even of ordering him to stop and come to them for those inquiries, they were then only acting out of suspicion and not out of probable cause. Therefore, they had no basis to arrest appellant and they had no basis to search his person without a warrant. *Henry v. United States, supra.*