**UNITED STATES of America,
Plaintiff,**

v.

**Lonnie STAFFORD, Jr., Defendant.**

**Crim. A. No. 1963.**

United States District Court
D. Delaware.

Sept. 12, 1969.

F. L. Peter Stone, U. S. Atty., and Norman Levine, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

H. Alfred Tarrant, Jr., Wilmington, Del., for defendant.

## OPINION

LATCHUM, District Judge.

The defendant is charged in an information with the illegal possession of a sawed-off shotgun which had been made in violation of 26 U.S.C. § 5821, which had been transferred in violation of 26 U.S.C. §§ 5811 and 5812, and which had not been registered pursuant to 26 U.S.C. § 5841, in violation of 26 U.S.C. § 5861. Defendant has moved to suppress as evidence the sawed-off shotgun seized from him by Wilmington police officers on the ground that it is the fruit of a search incident to an unlawful arrest. The essential facts relevant to this motion may be summarized as follows:

On the evening of March 14, 1969, Sergeant John Barry and Patrolman George Johnson of the Wilmington Police Department were on patrol together. Sergeant Barry received a call by police radio instructing him to contact Lt. Thomas Lingle at Headquarters. Sergeant Barry proceeded to a police call box at 10th and Van Buren Streets in Wilmington and spoke with Lt. Lingle, who told him that an informant, known

by Sergeant Barry to have been reliable in the past, had just reported that a 1959 Chevrolet, parked directly behind a Thunderbird in the 600 block of North Van Buren Street, contained a sawed-off shotgun.

The informant had indicated that the automobile was to be moved in approximately ten minutes. Sergeant Barry and Patrolman Johnson went immediately to the 600 block of North Van Buren Street and observed a 1959 Chevrolet parked directly behind a Thunderbird as reported. The officers then took up a position in the 500 block of North Van Buren Street where they could observe the vehicle as well as any activity in the immediate area.

Sergeant Renai, a plainclothes detective of the Wilmington police force, also had received a call from Lt. Lingle or Lt. Steffens that an automobile containing a sawed-off shotgun would be moved in approximately 10 minutes from the 600 block of North Van Buren Street. Sergeant Renai then took up a position in the vicinity of the 600 block of North Van Buren Street near 7th Street and informed Barry and Johnson that he was in the area to assist in their surveillance.

Shortly before 9:14 p. m., the defendant emerged from a dwelling in the 600 block of North Van Buren Street with a jacket over his arm. He got into the 1959 Chevrolet and proceeded north on Van Buren Street. Sergeant Barry immediately contacted Renai by radio, and Barry and Johnson then followed the Chevrolet on Van Buren Street. Defendant's Chevrolet passed Renai at 7th and Van Buren; Renai pulled out behind defendant's car, blew his horn, and signalled the defendant to stop. The defendant's car was stopped at or near the intersection of 8th and Van Buren Streets. Renai got out of his car and went over to the driver's side of the defendant's vehicle. Renai identified himself, showed his badge to the defendant, and asked him to get out of his car and show Renai some identification. Complying with this command defendant got out of his car and stood at the door on the driver's side. Sergeant Renai was approximately two feet away from the defendant who stood facing the Sergeant. Almost as soon as Sergeant Renai got the defendant out of his vehicle and asked for identification, Sergeant Barry went to the passenger side of the defendant's automobile to see if there was any possible weapon that could be used against them. Barry opened the door and observed that a brown coat was spread out in the middle of the front seat. Barry picked up the coat and underneath it found the sawed-off shotgun in question. Patrolman Johnson was not with Sergeant Barry when Barry searched for and seized the gun. By the time Johnson got out of the police car and reached the defendant's vehicle, Barry already had removed the shotgun from the front seat. Johnson then walked over to the driver's side where Renai and Stafford were standing. The police had no search warrant, and the defendant did not consent to the search of his automobile. Further, the government does not contend that any action or comment of the defendant at the time his car was stopped and searched in any way contributed to the facts offered to support a finding of probable cause for the arrest and search in this case.

Determination of the validity of the search in this case involves two basic questions. First, whether the police action in stopping the defendant's car and forcing him to get out and stand beside it was the kind of interference with personal liberty which requires probable cause to sustain its Constitutional validity under the Fourth and Fourteenth Amendments. Second, if there was this kind of interference, whether there was probable cause to justify the action of the police.

█ As to the first question, this Court concludes that an arrest took place when the police stopped the defendant and required him to stand by his car; because an arrest occurred at this time, probable cause was necessary to justify this restraint on the defendant's liberty. In Henry v. United States, 361 U.S.

98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), agents of the Federal Bureau of Investigation had placed the petitioner under surveillance because of his suspected involvement in the theft of liquor from an interstate shipment. The agents had observed the petitioner and another man loading cartons into a car on several occasions during the same day. After the petitioner drove away from the place where the cartons had been loaded, the FBI agents followed the car, "and finally, when they met it, waved it to a stop." 361 U.S. 98, 99, 80 S.Ct. 168, 169, 4 L.Ed.2d 134. In *Henry,* the Supreme Court concluded that this stopping of the car amounted to an arrest: "When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete." 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134. The restriction on the liberty of the defendant here was more substantial than the restriction which was found to constitute an arrest in *Henry.* Not only was the defendant's car stopped, but he also was required to get out of his car and stand beside it. At this point, Sergeant Renai confronted the defendant with his badge in one hand and with his other hand on his gun, which was unholstered and in his front pants pocket. Two other officers almost immediately joined Sergeant Renai at the scene and surrounded the defendant and his vehicle. Under these circumstances, this significant interference with the defendant's free movement requires the traditional justification of probable cause. United States v. Hostetter, 295 F.Supp. 1312 (D.Del., 1969). That the police did not intend to formally arrest Stafford, or did not believe that their actions constituted an arrest is not relevant to compliance with the standards of the Fourth Amendment.

■ Determination of the second question—whether there was probable cause to justify the arrest and incidental search—rests finally on the proper application of the Supreme Court's recent decision in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which interprets two prior leading cases, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). These three cases articulate standards for measuring the sufficiency of an informant's testimony in establishing probable cause. Although *Spinelli* and *Aguilar* considered the standard of probable cause for obtaining a search warrant, it is clear that at least as demanding a standard for finding probable cause is necessary for a search incident to an arrest without a warrant as for a search with a warrant. Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723; Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ In *Aguilar,* the Court stated a two-pronged test for evaluating the sufficiency of an informant's testimony in establishing probable cause: first, there must be facts indicating the informant's prior reliability; second, there must be evidence of "the underlying circumstances" from which the informer reached his conclusion as to probable criminal activity. The first requirement seems to have been met in the present case. Sergeant Barry testified that he had direct experience with the informer on at least one prior occasion and had found him to be reliable. The petitioner has not challenged the previous reliability of the informant. This Court finds that for purposes of this motion, the prior reliability of the informer has been sufficiently established.

It is the second requirement of *Aguilar,* as reaffirmed in *Spinelli,*—that there be an adequate statement of the facts and circumstances upon which the informant based his conclusion as to probable criminal activity—which is crucial to determination of the present motion. This second requirement was first clearly stated in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933) where a warrant was issued on the affirmation of a Federal officer that he "has cause to suspect and does

believe" that certain contraband liquor was in a specified location. The Court in *Nathanson,* noting that the affidavit "went upon a mere affirmation of suspicion and belief without any statement of adequate supporting facts," announced the following rule:

"Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." [1]

Thus, *Nathanson* stands at least for the proposition that the belief of an officer, without any indication of the facts on which his belief is based, does not satisfy the requirement of probable cause. The conclusion reached in *Nathanson* as to the inadequacy of the mere suspicion or belief of a law enforcement officer has been applied with equal validity to the factually unsupported conclusion of an informant.[2] Aguilar v. Texas, supra, fn. 3; Cf. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

There is no indication in the present record that the informer told the police of the "underlying circumstances" from which he reached his conclusion as to the probable criminal conduct of the defendant Stafford. Such a finding, however, does not finally resolve the question of probable cause. For the Supreme Court in *Spinelli* noted an alternative to the second prong of the test outlined in *Aguilar*: "In *the absence* of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in *sufficient detail* so that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637. (Emphasis added).

Thus, absent a specific statement of facts and circumstances upon which the informant's conclusion was based, the informant's report must be made in sufficient detail to permit a magistrate to infer that the informant spoke from personal observation or other particular knowledge of the criminal activity. Such an inference, based on the sufficiently detailed report of an informant, would thus effectively comply with the second requirement of *Aguilar* and *Spinelli*—that a court must independently evaluate the underlying circumstances from which the informant concluded that a crime was being committed.

As an example of the "detailed description" which satisfies this test, the Court in *Spinelli* cited Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In *Draper,* one Hereford, an informer for the Federal Bureau of Narcotics,[3] did not state the way in which he had obtained his information, but did report a number of important details to identify Draper and his movements. Hereford identified Draper by name, and stated the address at which he was living in Denver. Hereford reported that Draper had gone to Chicago to obtain a quantity of heroin and would return to Denver by train either on the morning of September 8 or 9. Hereford provided a "detailed physical descrip-

---

1. 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L. Ed. 159.

2. As noted by Justice White, concurring in *Spinelli*: [I]f the affidavit of an officer, known by the magistrate to be honest and experienced, stating that gambling equipment is located in a certain building is unacceptable, it would be quixotic if a similar statement from an honest informant were found to furnish probable cause. (393 U.S. 410, 424, 89 S.Ct. 584, 593, 21 L.Ed.2d 637).

3. Hereford had been a "special employee" of the Bureau of Narcotics in Denver for about six months, and from time to time had furnished information concerning narcotics violations which had always proved reliable. 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

tion" [4] of Draper and of the clothing he would be wearing upon his return, and said that he would be carrying a "tan zipper bag" and that he habitually "walked real fast." 358 U.S. 307, 308, 79 S.Ct. 329, 3 L.Ed.2d 327. This information as to Draper's time of arrival, appearance and characteristic gait proved completely accurate. The Court in *Spinelli* concluded that a magistrate, when confronted with such detail, "could reasonably infer that the informant had gained his information in a reliable way." 393 U. S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed. 2d 637.

In his concurrence in *Spinelli,* Justice White attempted to clarify the Court's view of the kind of detail which will suffice to meet this second alternative standard. Justice White initially agreed that the informer's *past* reliability, without more, can never be sufficient to furnish probable cause in a new case. "The past reliability of the informant can no more furnish probable cause than can previous experience with the officer himself." 393 U.S. 410, 424–425, 89 S.Ct. 584, 593, 21 L.Ed.2d 637. Justice White then stated that he was inclined "to agree with the majority that there are *limited special circumstances* in which an 'honest' informant's report, if sufficiently detailed, will in effect verify itself"—that is, will provide a basis from which the magistrate could reasonably infer that it was gathered in a reliable way.[5] This detailed information would sometimes imply "that the informant himself has observed the facts." 393 U.S. 410, 425, 89 S.Ct. 584, 593, 21 L.Ed. 2d 637. Justice White believed that the *Draper* case indicated circumstances which would justify this kind of inference by a magistrate: " * * * the kind of information related by the informant (in *Draper*) is not generally sent ahead of a person's arrival in a city except to those who are intimately con-

nected with making careful arrangements for meeting him. The informant, posited as honest, somehow had the reported facts, very likely from one of the actors in the plan, or as one of them himself." 393 U.S. 410, 426, 89 S.Ct. 584, 594, 21 L.Ed.2d 637.

Justice White thus indicated that knowledge of detailed facts, which would allow an inference that the informant had particular, reliable knowledge of the underlying criminal activity, may provide the basis for finding probable cause although there was no explicit statement of the facts and circumstances on which the informer based his conclusion. It should be noted, however, as Justice White is quick to point out, that *Draper* did not proceed on this theory. Justice White interpreted the Court's opinion in *Draper* as following what might be called a critical mass approach. Justice White correctly notes that the Court in *Draper* reasoned that when the officer saw a person getting off the train at the specified time, dressed and conducting himself precisely as the informant had predicted, all but the critical fact with respect to possession of narcotics had been verified and for that reason the officer had "reasonable grounds" to believe that Draper was carrying narcotics. Justice White denied that *Draper* can properly stand for the proposition that "the existence of the tenth and critical fact is made sufficiently probable to justify the issuance of a warrant by verifying nine other facts coming from the same source." 393 U.S. 410, 426–427, 89 S.Ct. 584, 594, 21 L.Ed.2d 637.

■ Rather, the inference which the detailed information permits is an inference about the *manner* in which the honest informer's information was gathered in the present case, i. e. an inference concerning the informer's adequate knowledge of the criminal conduct which he describes. As Justice White sums up

---

4. Hereford told [the Federal narcotics agent] that Draper "was a Negro of light brown complexion, 27 years of age, 5 feet 8 inches tall, weighed about 160 pounds, and that he was wearing a light colored raincoat, brown slacks and black shoes." 358 U.S. 307, 309, n. 2, 79 S.Ct. 329, 331, 3 L.Ed.2d 327.

5. Emphasis added.

his view of *Draper:* "The thrust of *Draper* is not that the verified facts have independent significance with respect to proof of the [criminal activity]. The argument instead relates to the reliability of the source; because an informant is right about some things, he is more probably right about other facts, usually the critical, unverified facts." 393 U.S. 410, 427, 89 S.Ct. 584, 594, 21 L. Ed.2d 637. Thus, the question is the particularity of detail which permits an inference to be made concerning the circumstances of the informer's observation of the criminal activity in question.

■ Applying these guidelines to the present case, the existence of probable cause rests on a determination of whether the informant's description of criminal activity enables this Court to determine that the informant, as commanded by *Spinelli* and *Draper* "is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation" i. e. whether the alleged description of the circumstances of the crime was sufficiently detailed to allow the magistrate to make a reasonable inference as to the particularity and reliability of the informant's knowledge in the present case. There are certain similarities between the present case and *Draper*. In both cases, the informant made an accurate prediction about the future movement of the suspect. There are, however, important differences between the two cases. In *Draper* the suspect had been under surveillance by the informant for approximately a week. Further, the informant accurately predicted not only the suspect's time of arrival, but also described in considerable detail the manner in which he would be dressed. Here, the informant apparently did not tell the police the name of the defendant or the manner in which he would be dressed. Lt. Lingle had received information from an informant (known to be reliable in the past to Sgt. Barry) "that a '59 Chev-

rolet * * * parked directly behind a Thunderbird in the 600 block of North Van Buren Street contained a sawed-off shotgun." It seems, although the record is not completely clear on this point, that the information received by Lt. Lingle also indicated that the car would be moved in about 10 minutes. At the hearing, the following colloquy between the Assistant United States Attorney and Sgt. Barry occurred: [6]

Q. After you received the call from Lieutenant Lingle—what caused you to go to the call box to receive the call from Lieutenant Lingle?

A. I had received a call to contact Lieutenant Lingle in the vicinity of 8th and Van Buren.

Q. You received a call? You mean by police radio?

A. Police communication. And of course with this communication, my information was that this car was going to be moved in approximately 10 minutes.

This colloquy does not make clear the source of the "information" concerning the time when the car would be moved. This Court concludes, however, that the only reasonable inference was that the informant told officer Lingle (who then conveyed the information to Sgt. Barry) that someone would enter and move the car in about 10 minutes. There is further evidence to this effect in the record: [7]

Q. You say you were told that someone was expected to enter the car in approximately 10 minutes?

A. (Sgt. Barry) That is correct.

Sergeant Barry did take up a position in the 500 block of North Van Buren at approximately 8:58, and at about 9:14 p. m. the defendant emerged from a home on the 600 block of North Van Buren and entered the '59 Chevrolet parked in front of the Thunderbird.

The question here is, therefore, whether this degree of detail, concerning the location of the automobile and the time the suspect would enter and move the

6. Transcript pp. 13–14.

7. Transcript p. 14.

vehicle, constitute the degree of detail necessary to support a reasonable inference that the informant spoke from particular knowledge about the criminal activity of the defendant.

While this is a close case, this Court concludes that the government's evidence, though not overwhelming, is sufficient to establish probable cause. The Court, in endeavoring to follow the guidance provided by the United States Supreme Court in *Draper, Aguilar,* and *Spinelli,* must still exercise its own judgment as the trier of fact in evaluating the probability of criminal activity under the facts and circumstances of this particular case. This Court finds that although the informant made no statement of the specific facts and circumstances on which he based his conclusion, his report that a '59 Chevrolet, parked at a designated location, would be moved in approximately 10 minutes, did provide the kind of particular detail that permits this Court to infer that the informant gained his information in a reliable way. Knowledge that the car would be moved at a particular time is not the kind of information which is usually based on rumor or the general reputation of an individual. Rather, it is information normally known only to someone who has the confidence of the person planning to move the automobile in question. Justice White, concurring in *Spinelli,* emphasized the importance of the informant's knowledge of the future movements of the suspect in *Draper* as a basis for verifying that the informant had gained his information in a reliable way.

This Court must acknowledge that the resolution of this question here is not and, it seems, cannot be responsive to *all* of the guidelines suggested in *Aguilar, Spinelli* and *Draper.* Without a specific statement of the facts and circumstances on which the informant based his conclusion, it is *possible* that the informant gained his information about the movement of the car and the location of the sawed-off shotgun from an unreliable informant. Such a possibility, however, is inherent in any *Draper* type of situation,

and cannot be completely negated by even the most substantially detailed description. This Court believes that wherever possible, i. e., in most circumstances, the police should determine the basis of the informant's conclusion. Here, however, in the circumstances of this particular case, and in exercise of its responsibility as the trier of fact, this Court finds that the report of a reliable informant as to the location of the car, when coupled with the statement of the time the car would be moved (details confirmed by police observation), provides a sufficient and reasonable basis to infer that the informant gained his information from the personal confidence of the defendant, or from personal observation, rather than from an unreliable source. This conclusion is simply an evaluation of the most reasonable probabilities under the circumstances of this particular case.

The conclusion of this Court also takes into account the exigencies of this particular case while respecting the basic Constitutional protections which apply in all circumstances, exigent or otherwise. The police here received a tip from an informant, known to be reliable in the past, that a car containing a dangerous weapon would be moved within approximately 10 minutes. The Supreme Court has recognized that exigent circumstances may alter the particular means of complying with the Fourth Amendment requirements. Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In the light of the imminent threat of the removal of the car alleged to contain a dangerous weapon, the police may not have inquired about specific means by which the previously reliable informant had reached his conclusion.

Of course, a conclusion by the police that limits of time and anticipated danger in the threatened removal of the weapon did not permit further investigation of the source of the informant's knowledge is not binding and, as such, is not persuasive to this Court. Rather, in its independent evaluation of the record

in this case, this Court concludes that in spite of the failure of the police to ask for, or to receive, a specific statement of the means by which the informant gained his knowledge, the inference that such information was gained in a reliable way is still reasonable under the circumstances of this case. Therefore, I find that probable cause existed for the arrest and search and, accordingly, an order will be entered denying defendant's motion to suppress.