**UNITED STATES of America**
v.
**Daniel DAVIS.**
**Crim. A. No. 32444.**

United States District Court,
E. D. Louisiana,
New Orleans Division.
June 17, 1971.

Gerald J. Gallinghouse, U. S. Atty., Patrick C. McGinity, Asst. U. S. Atty., New Orleans, La., for United States.

Louis A. Gerdes, Jr., New Orleans, La., for Daniel Davis.

HEEBE, District Judge:

On November 6, 1970, Daniel Davis was arrested by a United States Customs Agent for stealing seven radios from Customs custody. Davis pled not guilty to a one-count indictment charging him with a violation of 18 U.S.C. § 549—removal of goods from Customs custody. Thereafter, he filed this motion to suppress certain radios found in the trunk of his automobile, alleging that the search violated his Fourth Amendment rights. He also seeks the suppression of all inculpatory statements he made on the grounds that they were obtained in violation of his *Miranda* rights.

Pursuant to F.R.Crim.P. 12(b) (4) we ordered an evidentiary hearing. Because we feel that the radios were obtained by an "unreasonable search," we grant that part of the motion to suppress. However, we are unable to ascertain what inculpating statements defendant seeks to suppress, and accordingly deny that part of the motion without prejudice.

At the hearing, the evidence established that prior to November 6, 1970,

**352**

Captain Floyd of the Harbor Police had been investigating a series of waterfront thefts. A few days prior to November 6, Captain Floyd received a tip from an alleged "reliable informant" that the scarfaced driver of a blue 1960 Cadillac with a damaged left rear door had been involved in some of those waterfront thefts.

On the morning of November 6, Captain Floyd was staked out at the Julia Street Wharf when he saw a car fitting that description leave the wharf. Captain Floyd followed the car some twelve blocks and then stopped it. As he approached the car, he noted the driver had a prominent scar on his face. On request, the driver identified himself as Daniel Davis but refused to open the trunk so it could be searched. Captain Floyd then asked Davis to drive to Harbor Police Headquarters. The captain testified that while he did not then arrest Davis, he would have arrested him had Davis resisted being taken to headquarters.

At Harbor Police Headquarters, a United States Customs officer, who had been notified of Davis's arrest, arrested Davis for theft from Customs property. This officer, assisted by Harbor Policemen and by the defendant, conducted a search of defendant's trunk where the seven radios defendant now seeks to suppress were found.

These facts present three issues for our consideration: (1) when the arrest of Davis occurred; (2) whether the arresting officers had probable cause for the arrest at the time they made it; and (3) whether the warrantless seizure of the radios can be justified independently of the arrest as a "border search."

■■ We think that Davis was arrested not at Harbor Police Headquarters by the Customs officer but by the Harbor Police when they, after stopping his car, took him to police headquarters. An arrest occurs not when the police officer formally announces the arrest but when the officers restrict the arrestee's freedom of movement in any significant way. Henry v. United States, 361 U.S.

98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. Stafford, 303 F.Supp. 785 (D.Del.1969). Here, Captain Floyd asked Davis to proceed to headquarters and had another harbor policeman accompany Davis there in Davis's car. While Davis was not formally told he was under arrest, Captain Floyd testified that had Davis refused to go to headquarters, he would have been arrested. We think that at this moment Davis's liberty was as fully restricted as it was minutes later when the Customs officer formally arrested him.

■ We also agree with defendant's basic contention that the arresting officers lacked probable cause to arrest Davis for theft of Customs property. As Captain Floyd testified, the arrest was made solely on the basis of the tip, described above, that Captain Floyd received from a "reliable informant." Floyd refused to divulge the identity of the informant and gave no indication why he thought the informant reliable or what the basis of the informant's tip was.

Captain Floyd's testimony informed this Court of neither the "underlying circumstances from which the informant concluded that [Davis had stolen goods from the waterfront nor of] some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.'" Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964); McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Lacking this information, we are constitutionally prohibited from finding probable cause for arrest. Since probable cause for arrest is lacking, we need not determine whether the search of the automobile would be a permissible warrantless search incident to a lawful arrest. See, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The government, however, seeks to sustain this seizure independently of the arrest. As we understand this theory, the government claims that this was not a search incident to an arrest but rather a border search pursuant to 19 U.S.C. §§ 482, 1581 and 1582 which allow for certain searches even if no arrest is made.

These statutes have been construed to permit Customs officers to conduct searches at our borders without requiring them to have probable cause. United States v. Warner, 441 F.2d 821 (5th Cir. 1971); Alexander v. United States, 362 F.2d 379 (9th Cir.), cert. den. 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966); Mansfield v. United States, 308 F.2d 221 (5th Cir. 1962). Instead, the existence of "reasonable cause" or "reasonable suspicion" has been sufficient to validate such searches.

Without deciding whether this search for stolen radios would qualify as a border search for contraband[1] and without deciding whether the information the arresting officer had amounted to "reasonable suspicion,"[2] we hold that the radios must be suppressed as being poisonous fruit of the illegal arrest. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). It seems clear that by themselves the harbor police would have been unable to validly seize the radios through a warrantless search incident to the arrest.

Having illegally arrested Davis, the police should no more be allowed to exploit his illegal detention while arranging for a Customs officer to formally conduct the search than they should be allowed to harvest any illegal evidence obtained during their illegal detention. Both fruits have been labeled poisonous to deter police officers from engaging in practices designed to circumvent the various rights and protections granted to every citizen by the Constitution. Wong Sun v. United States, supra; Davis v. Mississippi, 394 U.S. 721, 89 S. Ct. 1394, 22 L.Ed.2d 676 (1969).

Defendant also seeks the suppression of any inculpatory statements he made on the grounds that his Miranda rights were violated. Defendant has failed to specify what statements he seeks to suppress and, having heard the evidence, the Court is still uncertain as to what statements defendant seeks to suppress.

Accordingly, it is the order of the court that the motion of defendant Daniel Davis to suppress the seven transitor radios seized from the trunk of his car, be, and the same is hereby, GRANTED.

It is the further order of the court that the motion of defendant Daniel Davis to suppress inculpatory statements taken in violation of his Miranda rights, be, and the same is hereby, denied without prejudice.

1. Since these statutory powers are in derogation of the Fourth Amendment's protections against unreasonable searches, they should be narrowly construed in accordance with their purpose. The primary purpose of these statutes was to allow customs agents to search border travelers for smuggled goods and contraband. United States v. Warner, 441 F.2d 821 (5th Cir. 1971). Were it not for these statutes, the government would have to engage in extensive police activities outside our borders in order to obtain probable cause to arrest suspected smugglers. Here, however, the defendant never crossed the border. His theft was not different from any other theft except that he stole from Customs custody. The police should be required to get probable cause here as they would be required to for any other theft from government property. To this extent, we find it difficult to accept the holdings of United States v. McGlone, 394 F.2d 75 (4th Cir. 1968) and United States v. O'Brien, 265 F.Supp. 953 (D. Mass.1967) which read these statutes as allowing Customs officers to search for goods stolen from Customs custody when the officers only have a reasonable suspicion of criminal activity.

2. The government, who has the burden of proving the legality of this search, was here trying to prove that the Customs officer had a reasonable suspicion of criminal activity, see Marsh v. United States, 344 F.2d 317 (5th Cir. 1965), without having the Customs officer testify and solely on the basis of statements by Captain Floyd as to what he believed the Customs officer suspected.