LEIGH M. CLARK, Retired Circuit Judge.
Appellant was convicted of robbing Resa Willingham of lawful currency of the value of forty dollars, the property of Sunshine Jr. Food Store 184, a corporation, and sentenced to imprisonment for fifteen years.
Mrs. Willingham testified that about 9:00 P.M. April 3, 1978, while she was night manager of Sunshine Jr. Food Store 184, in Langdale, Chambers County, Alabama, a black male, with a brown paper sack covering his face, with holes therein over his eyes and nose, entered the store carrying a gun. She said he walked over to the store cash register, and, with the gun pointed at her, told her he wanted the money; she opened the cash register, and the man reached over and took the money, which totalled approximately sixty dollars. The robber told her to go to the back and lie down, and he then left the store.
Dale Kennedy, a twelve-year-old girl, who lived across the street from the store, testified that she went to the store with her cousin, “saw a colored man standing there with a gun, no shoes on, no shirt, and he had a brown paper bag over his head.” She said it was a paper sack “with the eyes cut out.” She could see the man as he was close to the cash register and saw the “lady that was running” the store. She and her cousin did not go in the store. They ran home promptly. About five minutes later they went back to the store with their mother, and the man was not there. She said her mother then called the police.
Dale’s mother testified that when her daughter and her daughter’s cousin came from the store they told her there had been a robbery at the store and she promptly returned with them to the store. She saw a man running away from the store when she returned, but there was no one in the store but Mrs. Willingham at the time, and she was crying. She said law enforcement personnel arrived promptly.
Charles Magby testified that as he drove up to the store about 9:00 P.M. April 3, 1978, he saw a man come out of the store with a gun and a sack over his face. He said he trailed the man in his automobile for approximately a mile, then turned around and came back to the store. Police officers were there when he returned. He gave them a description of the automobile in which the man with the gun and a sack over his face had left the store. He described the automobile as a “reddish looking Duster,” with one tail light and a bent right front fender.
*828 According to all the witnesses who saw the man, the gun was not a pistol. It was referred to as a long gun, Mrs. Willingham calling it a shotgun and Mr. Bagby referring to it as a “rifle or something.” Police officers from the nearby Lanett Police Department and deputy sheriffs of Chambers County converged upon the store soon after the robbery.
Sergeant Wilbert Hutchison of the Lan-ett Police Department testified that he came on duty about 10:00 o’clock the night of the robbery and he was notified that there had been an armed robbery. He said he was given a description of the car and was told to be on the lookout for it. It was described to him as “red Plymouth Duster, with a bent right fender, front fender, and one tail light.” He said that the next night, about 10:00 or 10:30, his partner, Officer Mack Powell, who was in another automobile, called him and told him he had spotted the vehicle that fit the description of the automobile near the Hughley Restaurant and asked Sergeant Hutchison to meet him there and “back him up.” He did so, and the two got out of their vehicles. Sergeant Hutchison testified:
“And, the car did fit the description, and the subject in the car did fit the description, the height, build and everything. And, we asked him out of the car, and to just stand behind the police car. So, my partner was holding him behind the police car there, a talking with him, and, I walked up to the passenger’s side and looked in, and I saw a brown sack laying up under the seat on the floor board.”
At that point in the testimony of Sergeant Hutchison, defendant requested that the testimony be taken out of the hearing and presence of the jury, which request was granted.
On the hearing out of the presence of the jury it developed that two persons were in the automobile, defendant and his brother, and that defendant was the driver. Sergeant Hutchison testified that he could see that the automobile “did fit the description of the armed robbery, and the subject in the car did fit the description of the subject he was looking for.” He understood that the subject was “thin, tall and black,” had been advised that “he had a sack over his head, with eye holes.” He said, “I was looking for a gun, money bags and a brown paper sack.” His testimony out of the presence of the jury was in pertinent part as follows:
“THE COURT — Did you put him under arrest?
“A At that time, I did not, I just asked them, would they step out of the vehicle.
“COURT — What did they do?
“A They stepped out of the vehicle and went to the rear of the patrol car with my partner.
“COURT — Did you check them to see if they had any guns on them or anything like that?
“A Not at that time.
“COURT — Was anybody standing back there with them.
“A Yes, my partner.
“COURT — All right, then what did you do?
“A I walked up to the passenger’s side of the vehicle, and opened the door and I looked, and there was — I guess an inch of a brown paper sack sticking out from under the seat. So, I just reached and pulled it out. And I looked at it, and it did have two eye holes cut in it, with it rolled up on the side as if it was used as a mask.
“COURT — Did you see that brown paper bag before or after you opened the door?
“A Well, you could see it from looking in the window, you know, shining the light. Well, when the passenger got out of the car, you could see it then.
“COURT — Did you see it then?
“A Right, after he got out, the door was open see.
“COURT — As he was getting out, as he opened the door to get out—
“A And I said to him, I said, let the door open on the passenger’s side, and then they walked back to the back of the car, and I walked up you know, to verify what I had seen.
“COURT — You had already seen a brown paper sack—
*829 “A As he got out of the car.
“COURT — As he got out of the car.
“A Right.
“COURT — Then what did you do?
“A I pulled the sack out from under the seat.
“COURT — Was the door still open, or did you reopen the door?
“A No sir, it was still open. We shut the driver’s side back, at the road. And I walked back up to pull the sack out to verify, you know, see what it was.”
The interrogation of Sergeant Hutchison out of the presence of the jury continued through interrogation by both parties as to statements made by defendant, which will be hereinafter discussed in connection with any question as to the admissibility of such statements. At the conclusion of the interrogation of the witness out of the presence of the jury, defendant moved to “suppress the evidence of the bag and the statement,” which motion was denied.
Appellant takes the position that the paper bag was not admissible in evidence and that his motion to suppress it was erroneously overruled. He relies heavily upon Paschal v. State, Ala., 365 So.2d 681, rev’g Ala.Cr.App., 365 So.2d 672 (1978). There are some similarities between Paschal, supra, and the instant case, but there are distinguishing differences. According to the opinion of the Alabama Supreme Court in Paschal, there was an arrest and a search of an automobile as the result of a “radio dispatch, and the radio dispatch alone,” and further that in Paschal:
“ . . . [Tjhere is no evidence of the underlying circumstances which gave rise to the dispatch; there is merely the naked fact that a radio dispatch had described an automobile that fit the description of the defendant’s automobile.” 365 So.2d at 682
Appellant’s reference to the message from one law enforcement officer (Officer Powell) to another (Sergeant Hutchison) as a “radio dispatch” is an oversimplification of an urgent call for help. It is clear that at the time the vehicle was stopped each officer was acting upon information that he had personally received, in the course of his duty, as to the robbery of the store and the circumstances thereof. The information included the race of the robber, that he was wearing a sack as a mask, and that he left in a definitely described automobile that could hardly have been matched by chance by any automobile other than the one they stopped. Their action in stopping the automobile under such circumstances was praiseworthy instead of blameworthy. Furthermore, there was no search of the automobile that resulted in the discovery of anything that was offered in evidence. There had been no actual search of the automobile prior to the time the paper sack with the holes in it for eyes was found. A part of the sack was in open view. There was nothing improper about the officer’s taking the bag in his hand and viewing it before actually arresting the defendant and his brother. If the bag had been without holes, it would have been unfair to defendant for the officer not to have lifted it from the floorboard of the automobile and observed it more closely. The trial court was not in error in denying the defendant’s motion to suppress the “evidence of the bag.”
There was considerable evidence as to statements made by defendant from the time he was arrested at the place the automobile he was driving was stopped until after he had been interrogated by officers two or three times at the Lanett Police Department. There appears to be some dispute, and certainly there is some confusion, as to how long that night defendant was at times being questioned by officers, defendant apparently testifying that it was longer than what the testimony of the officers indicated. The record shows by strong testimony of some of the officers that defendant was fully advised and warned as to all his constitutional rights, and no point is made by appellant to the contrary. However, appellant insists that by reason of a definite statement made to defendant by one of the officers, a statement or confession by him was involuntary and should not have been admitted in evidence. The particular statement was that of Deputy Sher *830 iff Johnny Walker, who said that after talking with defendant and fully advising him of his rights and also talking with defendant’s brother and finding that their statements did not “match up,” he said to defendant, “[L]ook, you lied to us, you haven’t told us the truth.” Thereafter, according to the witness, and other witnesses, defendant confessed, stating that he was the only one involved in the robbery. Witnesses further said that he stated that about forty dollars in his pocket was about all that he had left from the robbery.
Without approving the statement made to defendant as stated above, we have no difficulty in determining as the trial court concluded, that such statement did not under all the circumstances make defendant’s confessions inadmissible in evidence.
“The confession was not inadmissible merely because it contained ‘leading’ questions. Confessions are not rendered inadmissible by reason of having been obtained by propounding to the accused questions assuming his guilt. Curry v. State, 203 Ala. 239, 82 So. 489 (1919); White v. State, 133 Ala. 122, 32 So. 139 (1902).” Twymon v. State, Ala.Cr.App., 358 So.2d 1072, 1074 (1978).
In his rather lengthy testimony on the trial, in which defendant testified that he was in no way involved in the robbery, he also testified to circumstances, which, if true, would have made his confessions inadmissible. He said, inter alia, that he was told by one or more of the officers that if he confessed his brother would be released and that he himself would obtain probation. On the contrary, there was ample testimony from the officers not only that there was no violence, threat, duress, or coercion, but also that no promises of any kind were made to defendant. Noticeably absent from the testimony of defendant as to what the officers did or said that would tend to make his confession involuntary is any reference to what Deputy Walker testified he said to the effect that defendant had been lying. Taking the wholeness of the circumstances into consideration, we hold that the trial court was correct in its determination that defendant’s confessions, oral and written, were admissible in evidence.
The last witness for the State was Captain E. L. Arrington of the Lanett Police Department. He testified that he was present at the Police Department when Officer Hutchison read defendant his rights and thereafter when Officer Walker read defendant his rights, and defendant had said he understood them. He also testified that defendant had not been “offered any reward, hope for reward or induced in any way” and was not “threatened to make a statement.” At that time, the following occurred:
“DONNA CLEVELAND — Judge, I would like to take this out of the presence of the jury.
“COURT — Motion denied. Go ahead.”
Thereupon the witness testified as to the oral and written confessions made by defendant.
Appellant charges that there was error in the court’s denial of defendant’s request that the witness be interrogated out of the presence of the jury. He relies upon Wallace v. State, 290 Ala. 201, 275 So.2d 634 (1973), in which it was stated:
“Whenever a motion is made for the question of the voluntariness of the confession to be determined outside of the presence of the jury, the motion should be granted by the trial court. In such a hearing the trial judge sitting alone should make a determination upon a proper record of the issue of voluntariness.”
In the instant case the written confession and the oral confession of defendant had already been admitted in evidence, after a hearing out of the presence of the jury. The requirement in Wallace v. State, supra, and related cases, was fully met thereby. As shown in Wallace, defendant at the time of the hearing outside the presence of the jury as to the voluntariness and Miranda requirements, defendant could have taken the stand without prejudice to himself on other matters and testified as to the circumstances of the claimed confession. It is *831 not contemplated by Wallace v. State or related cases that there be a series of hearings out of the presence of the jury or the question of the admissibility of a confession, after the question has been once determined and the confession has been admitted in evidence. The reason for the rule requiring a hearing out of the presence of the jury, so that the jury may not be prejudiced by hearing a confession that the court rules is inadmissible, disappears when the jury becomes apprised of the confession and its contents.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.