Leon Foy was indicted by the grand jury in 1976 for violation of the Alabama Uniform Controlled Substances Act, § 20-2-1, et seq., Code of Alabama 1975, in that he did "unlawfully possess 1.961 grams of powder containing heroin, a narcotic drug." At trial in 1979,[1] Foy was found guilty and sentenced to serve three years in the state penitentiary. Foy's sole contention on appeal is that the trial court erred in overruling his timely motion to suppress evidence of the heroin, allegedly the fruit of an unlawful search and seizure.
Charles F. Trucks, a sergeant with the Birmingham Police Department, was the sole state witness at the pretrial motion to suppress hearing, and also testified at appellant's trial. He related that, on the night of August 19-20, 1976, he and other law enforcement officers had been engaged in the surveillance of a specific apartment located on Goldwire Road in Birmingham for the purpose of observing "activities that were taking place within that apartment, or in the area, and, later on, to serve a search warrant on that residence" (R. 11). The officers did not have the warrant when the surveillance commenced. Sergeant Trucks stated that initially he was positioned behind some shrubbery in the parking lot of a commercial establishment some distance away, but was able to observe the apartment with the aid of binoculars. From this vantage point, he witnessed appellant and a female emerge from the apartment around 10:20 p.m. and leave in an early model automobile. He testified that the couple returned in the car some forty-five minutes later, but then left a second time in the same automobile.
In the interim, one of the officers had left the scene and returned with a search warrant, authorizing the search of the apartment (the warrant itself does not appear in the record, and no issue is raised as to its efficacy). Sergeant Trucks testified that, around midnight, the officers made preparations to serve the warrant, and he changed his position from the parking lot to a ditch adjacent to the apartment building's parking lot. An unidentified black police officer, clad in his uniform and a wind-breaker, but having removed his gun belt, approached the second floor apartment to knock on the door and attempt to gain entrance without exciting suspicion. At this point, Sergeant Trucks stated, the early model automobile returned, and a black female, identified as Bobbie Haley, got out while appellant remained inside (there is some confusion as to exactly when appellant left the automobile, that is, initially or only when Bobbie Haley raised her subsequent hue and cry; we attach no significance to what we consider to be these minor discrepancies, however). Sergeant Trucks stated that, upon seeing the officer near the apartment, the female suddenly yelled something like, "`Mama. Dump the dope. It's the cops. Let's get the hell out of here" (R. 64). Again, there is some variation between the versions of what she actually yelled; in any event all versions referred to "dumping dope" and the presence of the police.
At this point, the witness testified, both the female and appellant attempted to escape, the latter backing away and then running with his right hand down near his right ankle. Sergeant Trucks stated that he pursued them both, tackled them, and that he only subdued appellant after a violent struggle. Upon patting appellant *Page 323 
down, the officer discovered a matchbox hidden in appellant's right sock. The box contained "five or six" foil packages found to have a brownish powder in them. Appellant was placed under arrest, according to Sergeant Trucks, and conveyed upstairs to the apartment being searched; the female was placed in a police car. Sergeant Trucks testified that he gave the matchbox and foil packages to Sergeant James Sims.
Sergeant James L. Sims, a member of the Narcotics Division of the Birmingham Police Department, testified that he had obtained the search warrant for a specific apartment on Goldwire Road in the name of Marie Haley on the night of August 19-20, 1976. He stated that he was present when the raid took place, and witnessed Sergeant Trucks and appellant struggling on the ground during the course of the raid. By the time he arrived to help, Sergeant Trucks had subdued and handcuffed appellant. Sergeant Sims further stated that he received the matchbox containing the foil packages from Sergeant Trucks that night and placed them in his pocket until his return to police headquarters, at which time he sealed them in a standard evidence envelope. The next day, he stated, he opened the envelope for a magistrate, but re-sealed and initialed it, and conveyed it to Wayne Burrow of the Department of Forensic Sciences.
Wayne Burrow, a toxicologist with the State Department of Forensic Sciences, testified that he received the envelope from Sergeant Sims and performed a number of chemical tests on the contents of the foil packages. He stated that the packages contained 1.961 grams of powder of which 7.6 percent was heroin.
The State rested, and appellant's motion to exclude was overruled; appellant offered no witnesses and did not testify himself.
 I
Appellant contends that, under the facts as set forth above, the incriminating packets of heroin were the fruit of an illegal search and seizure and should have been suppressed pursuant to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684,6 L.Ed.2d 1081 (1961). We disagree with this contention, and hold that appellant's motion to suppress the evidence of heroin was properly overruled by the trial court.
It is well settled in constitutional jurisprudence, and appellant so concedes, that, though the use of a search warrant is usually mandated by the Fourth Amendment, a warrantless search may be made of a defendant's person pursuant to a lawful arrest in order to secure any weapons or evidence which the defendant might possess. See, Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Sibron v. New York,392 U.S. 40, 88 S.Ct. 889, 20 L.Ed.2d 917 (1968); Douglas v. State, Ala.Cr.App., 366 So.2d 373 (1979); Sellers v. State,48 Ala. App. 178, 263 So.2d 156 (1972). For such a search to be proper, it must not precede the arrest, but must be made contemporaneously with it and then limited only to the person of defendant or any area from which he might seize a weapon or destroy evidence. Chimel v. California, 395 U.S. 752,89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); United States v. Chadwick,433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); Allen v. State, Ala.Cr.App., 376 So.2d 826 (1979). While Sergeant Trucks' search of appellant in this case certainly did not exceed the permissible scope (as the heroin was discovered on appellant's person), appellant argues that the "search of Leon Foy was clearly prior to his arrest, not contemporaneous with, incident to it, nor after it." We disagree.
The facts indicate that immediately after the warning cry of his female companion, appellant attempted to depart the scene, all the while reaching toward his right ankle with his right hand. Sergeant Trucks tackled appellant, a struggle ensued, and appellant was subdued and handcuffed. Sergeant Trucks testified that, upon his discovery of the heroin, he placed appellant under arrest. Under such facts, contrary to what appellant asserts, we feel that the actual arrest of appellant was accomplished when appellant was forcibly subdued, because *Page 324 
at that point Sergeant Trucks "curtailed his freedom of movement on the basis of probable cause to believe that he was engaged in criminal activity." Terry v. Ohio, supra; Sibron v.New York, supra; Henry v. United States, 361 U.S. 98,80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. Strickler,490 F.2d 378 (9th Cir. 1974); cf. Central of Georgia Railway Company v.Carlock, 196 Ala. 659, 72 So. 261 (1916). Because the actual point of arrest is usually a question of fact, Sibron v. NewYork, supra, on the facts here presented, we are of the opinion that, "for the purposes of constitutional justification," appellant had already been subjected to arrest at the time the search of his person occurred, and thus the search was incident to his arrest.
Because, of course, evidence seized as the result of an unlawful arrest is inadmissible and must be suppressed, Malonev. State, 51 Ala. App. 19, 282 So.2d 367, cert. quashed,291 Ala. 789, 282 So.2d 371 (1973); we are necessarily confronted with the question as to whether appellant's arrest in this instance was lawful. Appellant's arrest was admittedly without a warrant and is thus governed by § 15-10-3, Code of Alabama 1975, which provides in relevant part:
 "§ 15-10-3. Arrest without warrant — when and for what allowed.
 "An officer may arrest any person without a warrant on any day and at any time, for:
. . . . .
 "(2) When a felony has been committed, though not in his presence, by the person arrested;
 "(3) When a felony has been committed and he has reasonable cause to believe that the person arrested committed it;
 "(4) When he has reasonable cause to believe that the person arrested has committed a felony, although it may appear afterwards that a felony had not in fact been committed;
. . ."
Under the terms of this statute, it is clear that a warrantless arrest is justifiable, and will be valid if the officer making the arrest had reasonable or probable cause to effect the arrest at the time it was made. See, Beck v. Ohio,379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Braxton v.State, Ala.Cr.App., 350 So.2d 753 (1977). In the Braxton
decision, as in many others, this Court set forth the general approach to be used in analyzing probable cause questions:
 "In determining whether there was probable cause to arrest, it is not necessary that the officer have before him evidence which would support a conviction for the offense. He must have facts and circumstances within his knowledge which are reasonably trustworthy and which would lead a prudent man to believe that the suspect had committed or was committing an offense. Beck, supra. The officer's good faith in making the arrest alone is not enough. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959)."
See, also: Sexton v. State, Ala.Cr.App., 349 So.2d 126 (1977);Knight v. State, Ala.Cr.App., 346 So.2d 478, cert. denied, Ala., 346 So.2d 483 (1977). Bearing in mind the above stated principles, and the injunction that "there is no formula for determination of reasonableness, and each case is to be decided on its own facts and circumstances," Thomas v. State,50 Ala. App. 227, 278 So.2d 230 (1973), we proceed to an examination of the circumstances here presented.
The tendency of the State's evidence, set forth in more detail above, was that law enforcement officers were observing a specific apartment; that the officers secured a search warrant for the apartment, directed to "Marie Haley." The appellant and one Bobbie Haley were seen entering and leaving the apartment at least twice in the time frame of a few hours; that upon discovery of the police officers, the female yelled a warning about police and "dope"; that she and appellant attempted to flee even after the officers identified themselves. Also, the appellant was attempting to reach something around his right ankle; and that the appellant violently resisted the officers. Further important facts are that narcotic *Page 325 
transactions were the object of surveillance and the search warrant, and that the entire sequence of events occurred around midnight in a parking lot.
We hold that, under these circumstances, Sergeant Trucks had probable cause to pursue and arrest appellant. This conclusion results from a combination of the factors shown above, including the possible presence of narcotics, the warning cries of the female, and the furtive actions of appellant. While flight is not, in itself, sufficiently indicative of guilt so as to support a finding of probable cause, when the fact of flight is connected with other circumstances, it may supply the necessary quantum of probable cause. Wong Sun v. United States,371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Sibron v. NewYork, supra; United States v. Vasquez, 534 F.2d 1142 (5th Cir. 1976). Appellant strenuously urges that this Court's decision in Shipman v. State, 51 Ala. App. 80, 282 So.2d 696, cert. quashed, 291 Ala. 484, 282 So.2d 700 (1973), would preclude a finding of probable cause in the instant case. A reading ofShipman shows that it is clearly inapposite factually to this case.
Appellant also argues that the United States Supreme Court's ruling in Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338,62 L.Ed.2d 238 (1979), is applicable, and he could not be subject to search simply because he was present at the time that the search warrant was served. While this principle is correct and has been recognized in this State, see Smith v. State, 292 Ala. 120, 289 So.2d 816 (1974), it has no application where, as here, probable cause that evidence may be concealed or destroyed by the individual is present. Travis v. State, Ala.Cr.App., 381 So.2d 97 (1979), cert. denied, Ala.,381 So.2d 102 (1980).
Since we hold that the warrantless search of appellant was justified as incident to a lawful arrest, we do not base our decision on any notion of "stop and frisk" or similar principles by which protective pat-downs for weapons may be made. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968); § 15-5-30, et seq., Code of Alabama 1975; see, e.g.,Dunaway v. State, 50 Ala. App. 200, 278 So.2d 200, cert. denied,291 Ala. 93, 278 So.2d 205 (1973); Butler v. State, Ala.Cr.App., 380 So.2d 381 (1980).
We have carefully reviewed the record in this cause and find same to be free from error. The judgment is therefore
AFFIRMED.
All the Judges concur.
[1] The time delay between Foy's indictment and trial was due to Foy's jumping bail and escaping this jurisdiction; he was re-arrested in 1979.