BOWEN, Presiding Judge.
This is an appeal by the State from the ruling of the Juvenile Court of Madison County granting the juvenile’s motion to suppress. Because we find that the police officer had sufficient probable cause to arrest the juvenile without a warrant, we reverse the judgment of the juvenile court.
A delinquency petition charged 16-year-old Q.L.B.[1] with burglary in the third degree, theft in the second degree, and receiving stolen property. After a hearing to determine whether the juvenile should be transferred to circuit court for criminal prosecution as an adult, the juvenile court found that the arresting officer had no probable cause to arrest the juvenile and granted the juvenile’s motion to suppress. We reverse.
“ ‘[Pjrobable cause’ to justify an arrest means facts and circumstances within the officer’s knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.” Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). “[G]ood faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.” Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959).
Huntsville Police Officer Bobby Abernathy was the only witness to testify at the transfer hearing. Abernathy testified that after receiving a radio dispatch concerning suspicious behavior by three male juveniles, he stopped three juveniles meeting the description contained in the radio dispatch. When the juveniles failed to satisfactorily identify or explain their possession of several electronic items discovered inside the tote bags in their possession, Abernathy concluded that further investigation into their involvement in a possible burglary was warranted. He stated that he then placed the three juveniles in his patrol car and that at that time they *780 were not free to leave. Abernathy said that at this point he called an investigator to come to the scene and his involvement in the case ended. According to Abernathy, he did not place the juveniles under arrest because he “did not say, TTou’re under arrest.’ ” R. 13. Later, at the police station, one of the juveniles confessed to breaking into a house and stealing the items found in the bags. It was after this confession that Q.L.B. was officially arrested and charged with a crime.
The actual point of an arrest is usually a question of fact. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Foy v. State, 387 So.2d 321 (Ala.Cr. App.1980). An arrest occurs when one’s freedom of movement has been curtailed. Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); Foy, supra, at 324. In 6A C.J.S. Arrest § 2 (1975), ‘arrest’ is defined:
“‘An arrest is the taking, seizing, or detaining the person of another by touching, or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest, or any deprivation of the liberty of one person by another or any detention of him, for however short a time, without his consent, and against his will, whether it was by actual violence, threats, or otherwise.’ ”
Waldrop v. State, 462 So.2d 1021, 1028 (Ala. Cr.App.1984) (emphasis added in Waldrop), cert. denied, 472 U.S. 1019,105 S.Ct. 3483,87 L.Ed.2d 618 (1985).
“‘Custody’ involves a ‘restraint or detention by a public servant pursuant to a lawful arrest.’ § 13A-10-30(b)(l) [Ala. Code 1975]. ‘The term [“custody”] is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession.’ Black’s Law Dictionary 347 (rev. 5th ed. 1979). See also Alexander v. State, 475 So.2d 625 (Ala.Cr. App.1984), reversed on other grounds, Ex parte Alexander, 475 So.2d 628 (Ala.1985). An individual is in custody even though he is lawfully physically restrained for the briefest period of time.” Sanders v. State, 512 So.2d 809, 811 (Ala.Cr. App.1987), overruled on related grounds, Ex parte McReynolds, 662 So.2d 886 (Ala.1994).
Officer Abernathy admitted that because he suspected that the three juveniles had committed a crime, he placed the juveniles in his patrol car and they were not allowed to leave. He also testified that he called for backup at this time. It is clear that Q.L.B. had been deprived of his liberty and was “in custody” once he was ordered to get inside the police car and was denied the option of leaving. It is therefore necessary that the probable cause to arrest Q.L.B. precede this event.
The circumstances of this case required that Abernathy have reasonable suspicion to stop and question the juveniles because there was no probable cause to arrest the juveniles when he initially encountered them. “[A] police officer may in appropriate circumstances and in an appropriate maimer approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.” Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868,1880,20 L.Ed.2d 889 (1968).
“Section 15-5-30, Ala.Code 1975, provides that a law enforcement officer ‘may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions.’ (Emphasis [omitted]). The statute is a codification of the principles announced in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See Key v. State, 566 So.2d 251, 252 (Ala. Cr.App.1990).”
Hopkins v. State, 661 So.2d 774, 778 (Ala.Cr. App.1994).
Abernathy testified that at approximately 9:00 on the morning of Wednesday, February 16,1994, he received a radio dispatch reporting that “three young black males [were] going door to door” in a specific neighborhood. R. 5. There was information that the complainant had stated that she “thought [the juveniles] were possibly breaking into houses.” R. 5. The three suspects were described as wearing large baggy clothes, *781 one was big and two were smaller, and they were carrying two bags, one of which was “a black ... tote bag.” R. 5, 7. Abernathy knew that several burglaries had recently been committed in this neighborhood. Although information received over a radio dispatch does not alone create probable cause to arrest, Brinks v. State, 500 So.2d 1311, 1313 (Ala.Cr.App.1986), this information may create reasonable suspicion to stop and question a suspect.
Abernathy testified that he went to the area and saw three young males walking down the street carrying two bags.' The juveniles matched the description given in the radio dispatch. Abernathy testified that in his experience many daytime burglaries “are committed by kids that are supposed to be in school.” R. 7. Abernathy stated that he stopped the juveniles and “asked them what they were doing” and that he said to them “[t]hey should have been in school.” R. 6. Abernathy testified that Q.L.B.’s “first words” in response were “why [was I] harassing him[,] ... [we] didn’t break into anything.” R. 6. The juveniles then explained that one boy had been kicked out of school and another had quit. Abernathy discovered that Q.L.B. was 16 years old and was no longer required to attend school.
Abernathy stated that he had no “suspicion as to what was in [the bags] before [he] looked in [them]” nor did he have any “idea that a crime had been committed.” R. 15. Then, Abernathy initially testified that, “[a]t that time [after asking about school] I placed [the boys] in my car and asked them if I could look in their bags. They said yes.” R. 7. This testimony, by itself, indicates that Abernathy did place the youths in custody without probable cause. It was the discovery of the electronic items concealed inside the tote bags, together with the other circumstances, that tipped the balance in favor of finding the probable cause necessary to justify placing the youths in custody for further investigation.
However, Abernathy subsequently clarified his testimony when he stated the youths voluntarily allowed him to look inside the bags while “[the juveniles] were standing outside [the police ear].” R. 15. Abernathy testified that “[w]hen I looked in the bag [I] saw the property.” R. 15. Inside the bags Abernathy found a VCR, a Walkman radio, a drum machine, and Sony headphones. Abernathy testified that Q.L.B. stated that “he owned the Walkman, the drum machine and the headphone were his.” R. 8. However, the juveniles were unable to identify the brand name of any item, and Q.L.B. “couldn’t tell [Abernathy] how anything worked.” R. 8.Abernathy also testified that the juveniles claimed to have been watching videos at the home of one of the other juveniles, and that then they decided to take the VCR to Q.L.B.’s house. However, according to Abernathy, the juveniles were walking in the opposite direction from Q.L.B.’s neighborhood when they were stopped.
At this point Abernathy’s reasonable suspicion to stop and question the juveniles ripened into probable cause to hold the juveniles in custody although the crime was undiscovered. Section 15-10-3(a)(4), Ala. Code 1975, permits a felony arrest based upon probable cause even though “it may afterwards appear that a felony had riot in fact been committed.” It was at this time that Abernathy “asked [the juveniles] to sit down in[side] the car.” R. 15.
In this ease, the following facts and circumstances provided Abernathy with ample probable case to arrest the juveniles: Abernathy had knowledge of recent burglaries in the area, a complainant had reported juveniles going door-to-door in a suspicious manner, Q.L.B. had made a voluntary statement about not being involved in a burglary, Abernathy had discovered electronic equipment in tote bags the juveniles were carrying, and the juveniles failed to satisfactorily explain the existence of the items discovered in the tote bags or to identify those items. The motion to suppress should have been denied.
The judgment of the juvenile court granting Q.L.B.’s motion to suppress is reversed. This cause is remanded to the juvenile court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.

. The anonymity of the juvenile is protected as required by Rule 52, A.R.App.P.